485 P.2d 375

STATE of New Mexico, Plaintiff-Appellee,

v.

John Wesley PAUL, Defendant-Appellant.

No. 566.

Court of Appeals of New Mexico.

April 2, 1971.

Rehearing Denied May 5, 1971.

Certiorari Denied May 19, 1971.

John V. Coan, Jack L. Love, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Santa Fe, Leila A. Andrews, Asst. Atty. Gen., for appellee.

## OPINION

DEE C. BLYTHE, District Judge.

The defendant appeals from his conviction of armed robbery, raising questions concerning line-up identification, sufficiency of the evidence to support the grand jury indictment, and admission of evidence of "casing" of the store which later was robbed. We affirm.

Despite the line-up identification issue, the defendant was convicted wholly on circumstantial evidence. None of the eye-witnesses to the crime was able to identify him as being one of the three robbers, although his physical characteristics were similar to those of a masked gunman they did describe. The evidence which linked the defendant with the crime included the finding of his fingerprint on a vodka bottle in the getaway car, which was wrecked in the store's parking lot with some of the stolen money still inside. This car was identified by appearance and by license number as being the same one used by the suspicious characters who "cased" the store earlier. A small Negro with a gun in his hand, later identified in the line-up as being the defendant, tried to commandeer a car near the robbery scene a short time after the robbery occurred; he had a cut on his hand and his teeth were bloody. In the wrecked getaway car was a nylon stocking knotted on one end, similar to that worn by the gun-wielding robber. The money taken in the robbery was in the car, which also contained a paper plate containing the remains of some barbequed ribs and potato

salad similar to a meal purchased by the defendant a short time before the robbery.

Appellant's first point is:

"THE COURT SHOULD HAVE HELD A HEARING OUTSIDE THE JURY'S PRESENCE TO DETERMINE WHETHER THE LINEUP WAS UNLAWFUL, AND SHOULD HAVE EXCLUDED EVIDENCE OF THE LINEUP IDENTIFICATION."

█ The facts which are necessary to present a question for review by the appellate court are those facts established by the record and any fact not so established is not before us on appeal. Section 21–2–1 (17) (1), N.M.S.A.1953 (Repl. Vol. 4 (1970)); State v. Colvin, 82 N.M. 287, 480 P.2d 401 (Ct.App.1971).

█ We do not reach defendant's first contention. There is nothing in the record on which to base defendant's allegation. Only Manuel Sanchez and the defendant testified about the lineup identification procedure. Sanchez testified that about 7 p. m. (a few minutes after the robbery) on November 10, 1969, he and his brother-in-law were trying to start a stalled car about two blocks from the store which was robbed. A Negro man approached the car, got in and asked for a ride. Sanchez refused, whereupon the Negro pointed a gun at him. Just then a police patrol car passed, and the Negro got out of the car and ran down the alley. Sanchez noticed that the Negro had a cut on his right hand, was bleeding from his teeth, and was about 5 feet 6 inches tall.

Sanchez testified about the line-up procedure. He said that there were six or seven Negroes in the line-up; that he thought three or four of them were taller than himself (5 feet 7 inches); that he thought more than one was young; and that he made his identification of the Negro who approached his car with a gun on the basis of a cut on the hand and bloody teeth.

The defendant testified he was in a line-up but the record does not indicate it was the same line-up viewed by Mr. Sanchez. Even assuming it was the same line-up, we do not know whom Mr. Sanchez pointed out in the courtroom. The record only shows that the man picked out of the line-up was sitting in the courtroom. This does not show that the identification was of the defendant.

On the in-court identification Mr. Sanchez testified:

"Q. Now, you say you identified this person. Who did you identify him as?

"A. The person sitting right there, I think.

"Q. Now, do you see in the courtroom this afternoon the same person that ran up to your car with the gun?

"A. Yes.

"Q. Would you point him out please?

"A. Sitting right there.

"Q. The Negro with the white shirt on?

"A. Yes, sir."

Next, appellant asserts,

"THE INDICTMENT SHOULD HAVE BEEN QUASHED BECAUSE THE LEGAL EVIDENCE BEFORE THE GRAND JURY WAS INSUFFICIENT TO ESTABLISH PROBABLE CAUSE THAT THE DEFENDANT COMMITTED THE OFFENSE."

In so contending, appellant admits that we would have to overrule or distinguish State v. Chance, 29 N.M. 34, 221 P. 183 (1923) in order to reverse on this ground. He suggests that we might distinguish the two cases on the basis that in *Chance* the court was concerned with the secrecy of the grand jury proceedings whereas here the transcript of the grand jury proceedings was revealed to the defense and made an exhibit in the case, hence no need for secrecy exists. However, secrecy was not the only or the most important consideration in *Chance*, where the court pointed out the procedural problems involved and the lack of statutory authority for the

courts to review the sufficiency of the evidence adduced before grand juries.

To be sure, the statutes on the subject have been changed since *Chance* was decided in 1923, but they are essentially similar to those there involved and still do not provide for judicial review of the sufficiency of the evidence considered by the grand jury. See §§ 41–5–10 and 41–5–11, N.M.S.A.1953, as amended by Laws of 1969, ch. 276, §§ 10 and 11.

■ Since the legislature in amending the laws pertaining to grand juries in 1969 still did not see fit to give the courts authority to review the sufficiency of evidence to support grand jury indictments, and since it is deemed to have had State v. Chance, supra, in mind when it enacted the new statutes, we see no reason to overrule or distinguish *Chance*. We note also that the Supreme Court of the United States had adopted a rule similar to that in *Chance*. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1955).

■ Another and shorter answer to the contention that the indictment should have been quashed is that defendant's motion (to dismiss) was filed after the defendant had pleaded not guilty to the indictment. We have long held that pleading to an information waives the right to a preliminary hearing or any formal defects therein, e. g., State v. Selgado, 78 N.M. 165, 429 P.2d 363 (1967); State v. Leyba, 80 N.M. 190, 453 P.2d 211 (Ct. App.1969) cert. denied 80 N.M. 198, 453 P.2d 219 (1969). By the same rationale, and the weight of authority, a motion to quash an indictment must be made before arraignment and plea. 42 C.J.S. Indictments and Informations § 199, pp. 1168, 1169; 41 Am.Jur.2d, Indictments and Informations, § 281, p. 1053.

For his final point, appellant states:

"THE EVIDENCE OF THE CASING OF THE PREMISES PERMITTED THE JURY TO BASE AN INFERENCE ON AN INFERENCE, AND WAS OTHERWISE IMMATERIAL."

The victims of the robbery testified that over a period of about 30 days before the robbery three of four Negroes excited their suspicions by loitering around the store which had very few Negro customers. Three of the victims testified to seeing these Negroes in or around a car which later turned out to be the getaway car. One even copied down the license number. None of the victims identified the defendant as being one of these Negroes who appeared to have reconnoitered or "cased" the store. Therefore, appellant contends, all this testimony was immaterial and prejudicial.

■ It was important to the state's case to connect the robbers with the car which was found wrecked on the store's parking lot shortly after the robbery. The robbers were not observed leaving in it, but the victims, from prone positions in the back of the store, heard the squeal of tires and then a crash. As previously stated, money identified as having been taken from the store was found in the car, as was a stocking mask such as one robber wore. The identification of the money was not by serial numbers but only by the way it was held together in certain quantities by rubber bands. Thus the "casing" of the premises by various Negroes, even though not identified as including the defendant, was material because they were using the purported getaway car.

■ Under this point, though not mentioned in it, appellant argues that the court improperly refused to give an instruction tendered by him relating to circumstantial evidence and particularly having reference to basing an inference upon an inference. The particular portion of the instruction to which appellant directs his argument is as follows:

"An inference of fact which is essential to establishing an offense cannot be rested upon an inference, nor can presumption be superimposed on presumption in order to reach ultimate conclusion of guilt."

The trial court did give an instruction on circumstantial evidence, the correctness of which is not challenged. The trial court, in our opinion, correctly declined to give appellant's tendered instruction, and, in particular, the portion thereof which we have quoted.

█ The evidence presented and to which we have referred does not properly suggest the necessity of cautioning the jury as suggested by the proposed instruction. The evidence connecting defendant with the crime is circumstantial and, as such, may properly serve as a basis for an inference of fact essential to the establishment of the offense. See State v. Serrano, 74 N.M. 412, 394 P.2d 262 (1964).

Since we find no error, the conviction should be affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.