853 P.2d 126

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Marco Mata Y RIVERA, Defendant–
Appellant.**

**No. 13540.**

Court of Appeals of New Mexico.

Jan. 20, 1993.

Certiorari Denied March 2, 1993.

**426**

Tom Udall, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Rita LaLumia Berg, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

### OPINION

BIVINS, Judge.

Defendant appeals his convictions for unlawful carrying of a firearm in a licensed liquor establishment and negligent use of a deadly weapon. He raises the following issues: (1) whether the negligent use of a deadly weapon statute, NMSA 1978, § 30–7–4 (Repl.Pamp.1984), violates his right to bear arms under the New Mexico Constitu-tion; (2) whether Section 30–7–4 is unconstitutionally overbroad and vague; (3) whether the trial court erred in admitting a sales receipt concerning Defendant's gun; (4) whether the trial court erred in admitting evidence concerning a liquor license; (5) the sufficiency of the evidence supporting Defendant's convictions; (6) whether the jury was adequately instructed; (7) whether Defendant was denied due process and his right to appeal because of an incomplete record; and (8) cumulative error. Defendant has expressly abandoned two other issues raised in a motion to amend the docketing statement filed while this case was assigned to the summary calendar. We affirm.

### FACTS

In the early morning hours of March 16, 1991, Officer Holguin was dispatched to the Hiway Package Lounge in Carlsbad to investigate a reported robbery. Holguin determined that no robbery had occurred. While at the bar, Holguin observed a car in which Defendant was a passenger strike another car in the parking lot. Holguin approached the car to investigate. He shined a flashlight in the car, and saw Defendant, seated in the left rear seat, holding a small caliber handgun. Officer Holguin yelled "gun" to alert other officers at the scene. Holguin said the gun was pointed toward the driver of the car, Arturo Rueda. Mary Lou Amalla, Rueda's girlfriend, was also a passenger in the car.

Officer Holguin ordered the occupants of the car to exit with their hands up. Mr. Rueda and Ms. Amalla complied almost immediately; Defendant did not. Defendant finally exited the car after several minutes. During the time Holguin was ordering Defendant to put his hands up, Defendant kept them down and kept "shuffling" them. Defendant did not have the gun when he got out of the car.

After the occupants exited the car, Holguin looked inside. He found a brown bag containing, among other things, a handgun, a box of ammunition, a magazine for the gun, and a sales slip for the gun with Defendant's name on it. The gun and its magazine were in separate compartments

of the bag. Both Mr. Rueda and Ms. Amalla testified that Defendant had a bag with him when they met him earlier outside the bar, and that the bag and gun found in the car did not belong to them. Ms. Amalla stated that Defendant took the bag inside and put it on the floor beside him. Neither Mr. Rueda nor Ms. Amalla could identify the bag in the car as Defendant's, and neither saw a gun in the bag, bar, or car.

### 1. ALLEGED INFRINGEMENT OF DEFENDANT'S RIGHT TO BEAR ARMS BY CONVICTION UNDER SECTION 30-7-4

■ Defendant contends that, under the facts of this case, his conviction for negligent use of a deadly weapon violates his right to bear arms under the state constitution. *See* N.M. Const. art. II, § 6 (Repl.Pamp.1992). The State answers that the statute lawfully restricts Defendant's carrying a firearm while under the influence of alcohol.

■ Initially, we note that Defendant has not cited any authority supporting his contention. Thus, we need not consider it. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Nevertheless, we address Defendant's argument and find it to be without merit. The right to bear arms under the state constitution is not absolute, and a defendant's right to bear arms is circumscribed by the conditions under which he or she seeks to assert the right. *State v. Dees*, 100 N.M. 252, 254, 669 P.2d 261, 263 (Ct.App.1983) (quoting *United States v. Romero*, 484 F.2d 1324, 1327 (10th Cir.1973)). In *Dees*, we entertained a similar challenge to NMSA 1978, Section 30-7-3 (Repl.Pamp.1984), which prohibits the unlawful carrying of a firearm in a licensed liquor establishment. We held that the legislative purpose of Section 30-7-3 was to " 'protect innocent patrons of businesses held out to the public as licensed liquor establishments.' " *Id.* at 255, 669 P.2d at 264 (*quoting State v. Soto*, 95 N.M. 81, 82, 619 P.2d 185, 186 (1980)). We upheld Section 30-7-3 as a valid regulation of the right to bear arms.

We agree with the State that the rationale of *Dees* is applicable to this case. "An act is within the state's police power if it is reasonably related to the public health, welfare, and safety." *People v. Garcia*, 197 Colo. 550, 595 P.2d 228, 230 (1979) (en banc) (Colorado statute prohibiting possession of a firearm while under the influence of intoxicating liquor did not impermissibly restrict the defendant's right to bear arms and, thus, was not overbroad). The State permissibly exercises its police power by prohibiting the possession of firearms by persons under the influence of alcohol or drugs. *Id.* Possession of firearms by intoxicated persons presents a clear danger to the public. The state constitution does not support a right to engage in this type of behavior. *See id.; Dees*, 100 N.M. at 255, 669 P.2d at 264.

The constitutionality of a statute is generally subject to challenge only by someone who demonstrates the unconstitutional application of the statute to him. *State v. Casteneda*, 97 N.M. 670, 678, 642 P.2d 1129, 1137 (Ct.App.1982). Here, the evidence indicated that Defendant was a potential danger to the public. There was evidence that Defendant was intoxicated. Officer Holguin saw Defendant pointing the gun at Mr. Rueda. Defendant appeared to be loading the gun. We conclude that Defendant's constitutional right to bear arms was not impermissibly infringed by his conviction under Section 30-7-4.

### 2. ALLEGED UNCONSTITUTIONAL VAGUENESS AND OVERBREADTH OF SECTION 30-7-4

■ Defendant next contends that Section 30-7-4 is unconstitutionally vague and overbroad. Specifically, he argues that Section 30-7-4, when read with NMSA 1978, Section 30-7-1 (Repl.Pamp.1984), does not give fair notice of what conduct is prohibited. We disagree.

■ If a defendant challenges a statute as vague, the reviewing court presumes the statute is constitutional. *State v. James M.*, 111 N.M. 473, 477, 806 P.2d 1063, 1067 (Ct.App.1990), *cert. denied*, 111 N.M. 529, 807 P.2d 227 (1991). We consider the stat-

ute in its entirety, giving words their ordinary meaning unless a contrary intent is indicated. *Id.* "To satisfy the constitutional requirements of due process, the statute must provide adequate warning to a person of ordinary intelligence that his [or her] conduct is prohibited." *Id.*

Section 30–7–4(A)(2) defines negligent use of a deadly weapon as "carrying a firearm while under the influence of an intoxicant or narcotic." While "carrying a firearm" is not defined in Section 30–7–4, Section 30–7–1 defines "carrying a deadly weapon" as "being armed with a deadly weapon by having it on the person, or in close proximity thereto, so that the weapon is readily accessible for *use.*" (Emphasis added.) The definition of "deadly weapon" includes unloaded firearms. NMSA 1978, § 30–1–12(B) (Repl.Pamp.1984). We understand Defendant to argue that the term "use" is not defined, thereby rendering the statute vague because persons can be convicted without any showing that the firearm was used or intended to be used. He further argues that the statute does not provide clear guidelines for law enforcement officers because "under the influence" is not defined. Thus, the statute requires a subjective determination by the officer, giving rise to the possibility of uneven enforcement.

We conclude that Section 30–7–4(A)(2) is not unconstitutionally vague. The terms of the statute give fair warning of the prohibited conduct. A person may not have a deadly weapon "readily accessible for use" while under the influence of intoxicants or narcotics. We give the terms "accessible" and "use" their ordinary meanings. *See James M.,* 111 N.M. at 477, 806 P.2d at 1067. "Accessible" means "capable of being used." *Webster's Third New International Dictionary* 11 (1971). "Use" means "to put into action or service." *Id.* at 2523. A person of ordinary intelligence would understand what conduct is prohibited by the statute: having a firearm nearby, readily capable of being put into action or service, while under the influence of alcohol. The statute plainly does not require that the intoxicated person actually use or intend to use the firearm.

Further, an officer's determination that a person is "under the influence" is not entirely subjective. Officer Holguin gave several examples of objective indicators of impairment: odor of alcohol, bloodshot eyes, altered speech patterns, etc.

■ Defendant also contends the statute is overbroad, presumably based on his argument that his possession of the gun was protected under our state constitution. Generally, to have standing to challenge a statute as overbroad, a defendant must show that " 'his own conduct could not be regulated by a statute drawn with the requisite [narrow] specificity.' " *State v. Brecheisen,* 101 N.M. 38, 43, 677 P.2d 1074, 1079 (Ct.App.), *cert. denied,* 101 N.M. 11, 677 P.2d 624 (1984) (quoting *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965)).

■ Defendant cannot make this showing. As stated in the previous section, Defendant's conduct was dangerous. As such, it could be regulated even by a more narrowly drawn statute than the one at issue here.

■ Even if Defendant had standing, we do not agree with his overbreadth argument. The key factor in overbreadth analysis is the prohibition of legitimate acts. *Garcia,* 595 P.2d at 230. There is no constitutional right of intoxicated persons to carry firearms. *Id.* Thus, Section 30–7–4(A)(2), by prohibiting such conduct, does not prohibit legitimate acts and is not overbroad.

### 3. *THE SALES RECEIPT*

■ Officer Holguin found a sales receipt for the gun indicating that Defendant had purchased it at Michael Lee's Trading Company in Carlsbad on March 15, 1991. Defendant objected to admission of the receipt on the grounds it was hearsay and unauthenticated. The trial court admitted the receipt on the basis that it was simply offered to show what was found in the bag, and not for the truth of the matters asserted on its face. Defendant argues that the receipt was inadmissible hearsay and vio-

lated his confrontation rights because it was offered to show that he purchased the gun the day before the crimes.

■ We will affirm the trial court's admission of evidence absent a clear abuse of discretion. *State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). A hearsay statement is an out-of-court oral or written assertion offered to prove the truth of the matter asserted therein. SCRA 1986, 11–801(A), (C). Hearsay is inadmissible absent an exception under the rules of evidence. SCRA 1986, 11–802. We agree with the State that the receipt was not hearsay. First, the receipt was offered simply to show what was found in the bag. Second, it also tended to prove that Defendant had possession and control of the contents of the bag. The receipt was not offered to prove that Defendant had purchased the gun at the time, place, and price indicated on the sales slip. It is true that the jury might have inferred those matters from the receipt. However, evidence admissible for one purpose is not to be excluded because it is inadmissible for another purpose. *State v. Wyman*, 96 N.M. 558, 560, 632 P.2d 1196, 1198 (Ct.App.1981). Moreover, Defendant did not request an instruction limiting the jury's consideration of the receipt to the purpose for which it was admitted. *See* SCRA 1986, 11–105; *State v. Gonzales*, 113 N.M. 221, 228, 824 P.2d 1023, 1030 (1992) (failure to request limiting instruction resulted in waiver of error).

■ Defendant also asserts that the receipt was inadmissible because it was unauthenticated. *See* SCRA 1986, 11–901(A). The requirement of authentication is satisfied by evidence sufficient to support a finding that the matter is what it is purported to be. *Id.* We reiterate that the receipt was admitted to show what was found in the bag, and that Defendant had control over the bag's contents. The receipt was not offered to prove the matters asserted on its face. Under these circumstances, we conclude Officer Holguin was a witness with knowledge sufficient to provide the required authentication. *See* SCRA 11–901(B)(1).

## 4. *EVIDENCE OF LIQUOR LICENSE*

■ Defendant claims the trial court erred in admitting evidence that the lounge was licensed because the State failed to provide the defense, in advance, information regarding that evidence. Because the State did not offer the license itself—only the testimony of Officer Holguin that he saw the license—Defendant claims he was unable to adequately defend his case as to the licensing element of Section 30–7–3, unlawful carrying of a firearm in a licensed liquor establishment. Defendant cites no authority for his argument and raises the issue under *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.1985).

Although we need not consider Defendant's argument, *In re Doe*, 100 N.M. at 765, 676 P.2d at 1330, it is easily answered. Defendant knew of the charges against him. The State had the burden of proving that the establishment was licensed and disclosed the identity of its witnesses, including Officer Holguin. Defendant had an opportunity to learn of the officer's testimony. If he failed to do so, he cannot complain. This issue has no merit.

## 5. *SUFFICIENCY OF THE EVIDENCE*

Defendant maintains there was insufficient evidence supporting his convictions. To determine the sufficiency of the evidence, we inquire whether there exists substantial evidence to support a guilty verdict beyond a reasonable doubt as to each element essential to a conviction. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We "view the evidence in the light most favorable to the [S]tate, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.*

■ a. To sustain the charge of negligent use of a deadly weapon in this case, the State was required to prove that Defendant carried a firearm while under the influence of alcohol. *See* § 30–7–4(A)(2). Officer Holguin testified that he saw Defendant in the back seat of the car carrying a handgun. There was also sufficient evi-

dence that Defendant was under the influence of alcohol at the time. While "under the influence" is not defined in Section 30–7–4, we find guidance from authority interpreting that phrase in the context of motor vehicle operation. A person drives while "under the influence" "[i]f, by virtue of having consumed intoxicating liquor, [his or her] ability to handle [a] vehicle with safety ... [is] lessened to the slightest degree." *State v. Copeland*, 105 N.M. 27, 34, 727 P.2d 1342, 1349 (Ct.App.), *cert. denied*, 104 N.M. 702, 726 P.2d 856 (1986); SCRA 1986, 14–243. Officer Holguin testified that Defendant had a strong odor of alcohol about him, had bloodshot eyes, disobeyed his commands, was very talkative, and mocked the officers. Holguin, who had experience with about one hundred DWI arrests, also stated that Defendant's voice and speech patterns indicated he was impaired. Both Mr. Rueda and Ms. Amalla testified that Defendant was drinking inside the bar. Defendant points to evidence tending to explain away his physical symptoms and lack of cooperation. He also argues that the officer's testimony must be discounted because he did not administer any field sobriety or blood alcohol tests. With regard to Defendant's latter concern, we note Officer Holguin's testimony that he did not test Defendant because he was not driving. As for Defendant's attempt to provide alternative explanations for the evidence, it was for the jury to weigh the evidence, not this Court. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. We conclude that Defendant's conviction for negligent use of a deadly weapon is supported by substantial evidence.

■ b. To sustain the charge of unlawful carrying of a firearm in a licensed liquor establishment, the State was required to prove that Defendant carried a loaded or unloaded firearm in an establishment licensed to dispense alcoholic beverages. Section 30–7–3(A); *see also Soto*, 95 N.M. at 82, 619 P.2d at 186.

Defendant states that the only evidence showing that the Hiway Package Lounge was licensed to dispense alcoholic beverages came through the testimony of Officer Holguin. He argues "the officer did not remember what the license said, nor who signed" it and "[t]here was no evidence that the license had not expired." Defendant argues that this evidence was insufficient. We disagree.

Officer Holguin testified that he had been in the lounge "numerous" times and knew it sold alcoholic beverages. Mr. Rueda and Ms. Amalla testified that they had been drinking beer with Defendant immediately prior to the arrest. Officer Holguin said he entered the lounge on the day following the incident and saw the liquor license on the wall. He wrote down the number of the license: 916. Holguin stated unequivocally that he knew the Hiway Package Lounge was a "liquor establishment." Additionally, on cross-examination, defense counsel asked the officer how he knew that the license was authentic. Holguin answered that he knew because he had called the Department of Alcoholic Beverage Control (ABC). Defense counsel did not allow the officer to relate the telephone conversation, and the interrogation on that subject ended.

While it may have been stronger proof to have offered the license, the testimony of the owner of the bar, *see id.*, or the testimony of a representative of the ABC, we believe the evidence presented made out a prima facie case of licensing. The fact that there was no evidence that the license had not expired does not defeat the showing. The jury could reasonably infer that the license was in effect at the time of the incident. The evidence that supports this inference is the fact that the incident occurred on March 16, the officer saw the license on March 17, and NMSA 1978, Section 60–6B–5 (Repl.Pamp.1992), provides that all licenses provided for in the Liquor Control Act expire on June 30 of each year. Thus, the fact that the lounge displayed a license in March supports an inference that the license had not expired.

Additionally, we note that it is the express policy of this State that the sale of alcoholic beverages shall be licensed, and that the Director of the ABC shall enforce that policy. *See* NMSA 1978, § 60–3A–2

(Repl.Pamp.1992); *see also* NMSA 1978, § 60–7A–4.1 (Repl.Pamp.1992) (a felony for any person to sell alcoholic beverages at any place other than a licensed premises or as otherwise allowed by Liquor Control Act); NMSA 1978, §§ 60–4B–4 to –5 (Repl.Pamp.1992) (Director shall have power to investigate and to issue regulations, both for the purpose of enforcing the Liquor Control Act). The existence of a license on the premises of the Hiway Package Lounge is evidence that this policy was followed with regard to the lounge. To adopt Defendant's argument, we would have to presume that the Director allowed the lounge to dispense alcoholic beverages without a license for no less than eight and a half months. This we cannot do.

■ In the absence of evidence to the contrary, there is a presumption that public officers have performed their duties in a regular and lawful manner, and this presumption places on the opposing party the burden of producing evidence to the contrary. *See Fulwiler v. Traders & General Ins. Co.*, 59 N.M. 366, 374–75, 285 P.2d 140, 145–46 (1955) (It was not error for the trial court to refuse to rule that a conditional sales contract was invalid for lack of acknowledgement, in part because the public official whose duty it was to receive and file an acknowledged copy of the contract was presumed to have done his duty—i.e., the official was presumed to have ascertained that the contract was acknowledged before accepting it for filing.); *Herrera v. Zia Land Co.*, 51 N.M. 390, 391–92, 185 P.2d 975, 976 (1947) (A meeting of the town board of trustees was presumed to be a regular meeting because "the law presumes that public officials perform their duties until the contrary is shown."); *State ex rel. Delgado v. Romero*, 17 N.M. 81, 85, 124 P. 649, 650 (1912) (presumption exists that each department of the government will do its duty); *People v. Goodenough*, 89 Misc.2d 455, 391 N.Y.S.2d 940, 941–42 (Just.Ct.1977) (presumption existed that notice of suspension of driver's license was transmitted to the defendant by public official whose duty it was to deliver the notice); *see also City of Houston v. Moody*, 572 S.W.2d 13, 14–15 (Tex.Ct.App.1978)

(presumption existed that president of public water district was performing his duties in a regular, lawful manner when he signed promissory notes on behalf of district). We will not presume that the license displayed in March had expired the prior June, because that would require us to assume ABC allowed liquor to be sold for an extensive period of time after the statutory expiration date. We will allow the jury to draw an inference that the license displayed in March had been validly issued at one time, and that it was valid in March, based on the officer's description that it was a liquor license and that it was displayed for public view, and on a presumption that the agency was doing its job.

Defendant did not present any evidence to rebut the prima facie showing that the establishment was properly licensed. Thus, substantial evidence supports this element of the crime. *See Soto*, 95 N.M. at 82, 619 P.2d at 186.

■ c. We also hold that substantial evidence supports a finding beyond a reasonable doubt that Defendant carried a firearm in the lounge. Mr. Rueda and Ms. Amalla met Defendant outside the lounge. Defendant was carrying a bag. He took it inside the lounge. Later, when Officer Holguin searched the inside of the car, he found a bag. It contained a handgun. Although neither Mr. Rueda nor Ms. Amalla could identify the bag at trial, they testified that the bag did not belong to them. A reasonable inference is that it was the same one Defendant carried in the lounge. Also, since the bag contained a handgun when Officer Holguin conducted his search, and since Mr. Rueda and Ms. Amalla testified that the gun did not belong to them, it is reasonable to infer the bag contained the handgun when Defendant carried it in the lounge. *See State v. Paul*, 82 N.M. 619, 623, 485 P.2d 375, 379 (Ct.App.) (evidence connecting defendant to crime, although circumstantial, could properly serve as basis for inference of fact essential to establishment of offense), *cert. denied*, 82 N.M. 601, 485 P.2d 357 (1971). We hold that this element also is supported by substantial evidence.

### 6. *INSTRUCTIONS*

Defendant raises five issues concerning the adequacy of the trial court's instructions to the jury. Defendant contends that the trial court erred in its instructions on the charge of negligent use of a deadly weapon. He has moved that we certify these issues to the Supreme Court. *See* NMSA 1978, § 34–5–14(C) (Repl.Pamp.1990). We deny Defendant's request.

■ a. Defendant first argues that the trial court should have modified SCRA 1986, 14–703 to add the word "negligently." However, the trial court is required to give uniform jury instructions on the elements *without modification*. SCRA 1986, 14–101 to –9004 general use note. SCRA 14–703 is the elements instruction for the offense of negligent use of a deadly weapon. Further, addition of the word "negligently" was unnecessary since Section 30–7–4(A)(2) defines negligent use of a deadly weapon as "carrying a firearm while under the influence of an intoxicant or narcotic." The proscribed conduct is negligence per se. The trial court did not err in refusing Defendant's requested instruction.

b. Defendant also contends that the trial court erred in refusing his requested instruction defining negligence. As stated above, Uniform Jury Instruction 14–703 adequately defined negligence for the jury.

■ c. Defendant next argues that the trial court erred in refusing his requested instruction that the odor of alcohol on one's breath is not a sufficient basis for finding intoxication. *See Lopez v. Maes*, 81 N.M. 693, 699–701, 472 P.2d 658, 664–65 (Ct.App.), *cert. denied*, 81 N.M. 721, 472 P.2d 984 (1970). However, the odor of alcohol was not the only indication that Defendant was under the influence. Officer Holguin testified that Defendant had bloodshot eyes, disregarded his instructions, was very talkative, and mocked the officers. Other indicators were Defendant's voice and speech patterns. The officer stated his opinion that Defendant was under the influence. A party is entitled to an instruction on his theory of the case only if there is evidence to support it.

*State v. Ontiveros*, 111 N.M. 90, 93, 801 P.2d 672, 675 (Ct.App.), *cert. denied*, 111 N.M. 77, 801 P.2d 659 (1990). Defendant's requested instruction was correctly refused because it misrepresented the evidence before the jury. *See State v. Kraul*, 90 N.M. 314, 317, 563 P.2d 108, 111 (Ct.App.) (instruction which is confusing is properly refused), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977).

■ d. Defendant additionally contends that the trial court erred in refusing to submit Element No. 3 of the Uniform Jury Instruction for unlawful carrying of a firearm in a licensed liquor establishment. *See* SCRA 1986, 14–702. Defendant argues that legal authority was an issue in this case because there was evidence that he was seen with the gun in the parking lot, a place he could lawfully possess one. *See* § 30–7–3(A)(4). Instruction No. 5 adequately instructed the jury on Defendant's right to possess a firearm in the parking lot. "Instructions are sufficient if, when considered as a whole, they fairly present the issues and the applicable law." *State v. Lucero*, 110 N.M. 50, 52, 791 P.2d 804, 806 (Ct.App.), *cert. denied*, 110 N.M. 44, 791 P.2d 798 (1990).

e. Defendant contends that the trial court erred in refusing his requested instruction differentiating between possession of a firearm in a licensed liquor establishment and possession in the parking lot. We agree with the State that the issue of possession of a firearm in the parking lot was adequately presented to the jury in Instruction No. 5. *See id.*

### 7. *INCOMPLETE RECORD*

■ The parties seem to agree that a portion of the parties' discussion concerning jury instructions is missing from the record. Citing *State v. Moore*, 87 N.M. 412, 534 P.2d 1124 (Ct.App.1975), Defendant contends he has been denied due process and his right to appeal. *See also Manlove v. Sullivan*, 108 N.M. 471, 474 n. 1, 775 P.2d 237, 240 n. 1 (1989). The State responds that Defendant can show no prejudice from the incomplete record.

It appears that the missing portion of the record dealt solely with jury instructions. Defendant's requested instructions are contained in the record proper. He has fully argued several instructions issues in this appeal. The State does not assert that any of those issues were not preserved. Moreover, this Court can consider Defendant's arguments by reviewing the instructions in light of the testimony at trial. We also note that before numbering the instructions, the trial court gave each party an opportunity to state its objections on the record. In short, Defendant has not demonstrated how the missing portions of the record prejudiced him. This case is distinguishable from *Moore*, where the complete absence of a transcript combined with the inability of this Court to review the Defendant's contentions without a transcript made any attempt at review impossible. *Moore*, 87 N.M. at 412–13, 534 P.2d at 1124–25. We conclude that Defendant has not established a deprivation of due process or of his right to appeal.

## 8. CUMULATIVE ERROR

Finding no error, we find no cumulative error. *See State v. Larson*, 107 N.M. 85, 86, 752 P.2d 1101, 1102 (Ct.App.1988).

## CONCLUSION

We affirm Defendant's convictions for negligent use of a deadly weapon and unlawful carrying of a firearm in a licensed liquor establishment.

**IT IS SO ORDERED.**

ALARID, C.J., and MINZNER, J., concur.