879 P.2d 1208

**STATE of New Mexico,
Plaintiff–Appellee,**

**v.**

**Teresa PADILLA and William Soper,
Defendants–Appellants.**

**Nos. 14642, 14488 and 14683.**

Court of Appeals of New Mexico.

May 12, 1994.

Certiorari Denied June 23, 1994.

Tom Udall, Atty. Gen., William McEuen, Bill Primm, Ass't Attys. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Ass't Appellate Defender, Santa Fe, for defendant-appellant Teresa Padilla.

D. Scott Riedel, Santa Fe, for defendant-appellant William Soper.

## OPINION

ALARID, Judge.

Teresa Padilla and William Soper appeal their convictions for armed robbery and conspiracy to commit armed robbery, both of which were enhanced by the finding of the use of a firearm. Soper also appeals from an additional conviction for tampering with evidence. Because the appeals raise several common issues, we have consolidated them on this Court's own motion. *See* SCRA 1986, 12–202(F)(2) (Supp.1993). Case no. 14,488, which involved the denial of Padilla's motion for review of a bond order, was earlier consolidated with case no. 14,642. To the extent Defendant's contentions regarding the common issues are identical, we shall so treat them in our discussion.

We will address the common and separate issues in the following sequence: sufficiency of the evidence with respect to Padilla's convictions for armed robbery and conspiracy; sufficiency of the evidence to support a determination that Defendants used a firearm in the commission of conspiracy to commit armed robbery; failure of the trial court to determine whether Soper was competent to stand trial; refusal to give an instruction limiting the jury's consideration of testimony that a syringe was found on Padilla's person; the State's alleged misconduct during closing

argument as well as refusal to allow Padilla's counsel to make contemporaneous objections to that argument; refusal to allow impeachment of a police witness with questions about pending criminal charges; denial of Padilla's motion to sever; reading of witnesses' written statements; and denial of Defendants' motion for continuance or to reopen the evidence.

We reverse the enhancement of Defendants' conspiracy convictions and deny Defendants' challenges to the remaining issues.

## FACTS

The evidence viewed in the light most favorable to the verdicts is as follows. *See State v. Sutphin,* 107 N.M. 126, 130–31, 753 P.2d 1314, 1318–19 (1988) (standard of review). Soper entered a gas station while wearing a red bandanna over the lower part of his face. Two employees, Victoria Morgan and Miqui Ramirez, were present. Soper pointed a gun at Morgan and demanded money. Morgan gave Soper about $76, and Soper ran out the door. Ramirez ran after Soper and Morgan followed. Padilla was in the driver's seat of a red and white car, and she was wearing her hair in a bun. Padilla backed the vehicle out of a driveway as Soper approached, and Soper got into the car. The tires squealed, and the vehicle almost stalled before it took off down the street.

Ramirez pointed out the vehicle to Officer Ljunggren who happened to be in a nearby police car. Ljunggren pursued the car, and at first only Padilla was visible to him. After about a minute, Soper's head popped up on the passenger side. Ljunggren engaged his vehicle's emergency lights and siren, and Padilla's vehicle made a turn and continued through one more intersection before stopping. Soper was wearing a bandanna around his neck. Deputy Rohlfs found a box of .22 caliber ammunition and a wad of $78 on the floor of the passenger side of the car. After observing Soper squirm around while seated in the rear of the police vehicle, Rohlfs also found a .22 caliber pistol on the floor of his patrol car. While Padilla was transported back to the gas station she moved around a lot and tried to shake her hair loose.

Padilla testified that she had stopped at a cocktail lounge after work and that Soper had asked her for a ride to the neighborhood where the gas station was located so that he could see a boss or friend. Padilla drove with Soper to Willow Road, pulled off the street, and waited for Soper in her car. She did not see where Soper went, and, when he returned, they drove away. Padilla denied making any agreement with Soper to commit an armed robbery.

## SUFFICIENCY OF THE EVIDENCE

Padilla correctly points out that the only evidence that she aided and abetted the robbery or conspired with Soper to commit the robbery is evidence of her post-crime behavior. However, we are not persuaded that there is no logical connection between her conduct and the jury's determination of guilt. *See State v. Lujan,* 103 N.M. 667, 674, 712 P.2d 13, 20 (Ct.App.1985) (conduct of an accused after a crime may circumstantially establish her participation in the crime), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986). Several reasonable inculpatory inferences can be deduced from the evidence outlined above. *See Dull v. Tellez,* 83 N.M. 126, 128, 489 P.2d 406, 408 (Ct.App.1971) (reasonable inference defined).

■ It is rational and logical to conclude from evidence that Padilla parked randomly, started backing the car up before Soper arrived, and that the tires squealed as she drove away, that Padilla knowingly helped Soper commit the crime of armed robbery by delivering him to the scene and by driving the "getaway" car. *See, e.g., United States v. Wilkins,* 659 F.2d 769, 773 (7th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981); *Williams v. State,* 271 Ind. 656, 395 N.E.2d 239, 245 (1979). It is also reasonable to infer from her failure to stop the vehicle immediately when the police lights and siren were engaged that she sought to delay her capture and the seizure of evidence. *Cf. State v. Kenny,* 112 N.M. 642, 646, 818 P.2d 420, 424 (Ct.App.) (flight is relevant to show a consciousness of guilt), *cert. denied,* 112 N.M. 499, 816 P.2d 1121

(1991). One could further reasonably conclude that Padilla's efforts to shake her hair loose were an attempt to change her appearance and to make it more difficult for any witness to identify her as the person who drove away from the crime scene with Soper. In sum, the jury could have reasonably inferred that Padilla agreed with Soper to commit armed robbery with a firearm and helped him in the commission of that crime. *See* NMSA 1978, §§ 30–16–2 (Repl.Pamp.1984); 30–28–2(B)(2) (Repl.Pamp.1984); 31–18–16(A) (Repl.Pamp.1990).

## USE OF A FIREARM IN THE COMMISSION OF CONSPIRACY

■ Section 31–18–16 provides for a one-year increase in the basic sentence provided for a non-capital felony if there is a finding that a firearm was used in the commission of that felony. The State contends that the same evidence which leads to the inferences that Defendants planned and agreed for a gun to be used in the robbery and that a gun was used in the commission of the armed robbery also constitutes proof of the use of the firearm "in the conspiracy." The question of whether a conviction for conspiracy is subject to a firearm enhancement appears to be one of first impression. *Cf. State v. Jackson*, 116 N.M. 130, 135–36, 860 P.2d 772, 776–77 (Ct.App.) (enhancement for completed offenses other than conspiracy), *cert. denied*, 115 N.M. 795, 858 P.2d 1274, *State v. Johnston*, 98 N.M. 92, 98, 645 P.2d 448, 454 (Ct. App.) (same), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982). In our view, the initiatory crime of conspiracy is not susceptible to a firearm enhancement under Section 31–18–16.

■ An agreement is the gist of the crime of conspiracy; "an overt act is not required, [and] the crime is complete when the felonious agreement is reached." *State v. Leyba*, 93 N.M. 366, 367, 600 P.2d 312, 313 (Ct.App. 1979). Since the overt act of armed robbery, which constituted the object of Defendants' conspiracy, is not part of the crime of conspiracy, the use of a firearm in the commission of the robbery is not proof of such use in the conspiracy. *See id.* In other words, while evidence that Soper used a gun may support a finding that Defendants agreed to use a firearm to commit their unlawful objective, that same evidence does not tend to prove the circumstances under which the agreement was reached. Moreover, since conspiracy is an initiatory crime which involves no physical act other than communication, it is not conceivable to us how a firearm could be used in the commission of that offense. Accordingly, we reverse the enhancement of Defendants' conspiracy convictions.

## SOPER'S COMPETENCE TO STAND TRIAL

The thrust of Soper's claim is that the trial court did not sufficiently investigate the question of his competence even though the trial court was apprised on several occasions of Soper's intoxication during the trial. Since neither Soper nor his attorney asked the trial court to investigate, the issue suggested is whether the trial court abused its discretion in not pursuing the matter further on its own motion. In our view, no further action was required.

■ "The competency issue is whether a defendant understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense." *State v. Najar*, 104 N.M. 540, 542, 724 P.2d 249, 251 (Ct.App.), *cert. denied*, 104 N.M. 460, 722 P.2d 1182 (1986). When an issue of competency to stand trial arises the judge is required to make an initial determination as to whether there is a reasonable doubt regarding the matter. SCRA 1986, 5–602(B)(2) (Repl.1992); *State v. Noble*, 90 N.M. 360, 363, 563 P.2d 1153, 1156 (1977). That initial determination is only subject to review for abuse of discretion. *Noble*, 90 N.M. at 363, 563 P.2d at 1156.

■ A question of Soper's competency may first have been precipitated by the pros-

ecutor's report that an assistant district attorney not connected with the case had told her that Soper had the smell of alcohol about him and appeared to be under the influence of alcohol. However, Soper's counsel stated that he had spoken with his client and thought Soper was competent to proceed and not impaired in any way. Several days later, after Padilla's counsel stated that Soper appeared to be drunk and Soper's attorney expressed the view that his client was not sober, the trial court noted that it seemed Soper knew what was going on. *See State v. Powell,* 11 N.C.App. 194, 180 S.E.2d 490, 491 (1971) (trial judge who can observe defendant is in better position to evaluate effect of alcohol on competency). That same day, after Padilla's counsel complained that Soper used vulgar language in the hallway during a break, Soper's attorney said that Soper may be loud and aggressive and drink a lot but that counsel was very confident his client was not intoxicated.

In light of Soper's attorney's representations that Soper was competent and not impaired, and, in the absence of evidence that Soper did not understand the proceedings or charges, or could not assist in his defense, we cannot say that the trial court's implicit determination that there was no reasonable doubt as to Soper's competence constituted an abuse of discretion.

## EVIDENCE THAT A SYRINGE WAS FOUND ON PADILLA'S PERSON

The prosecutor asked Deputy Nieto what she found upon searching Padilla after the stop. Nieto responded that she found a syringe. Padilla objected on the grounds that the testimony was not relevant. Padilla argues that the trial court erred in denying both her motion for mistrial and in refusing to give the jury her tendered instruction limiting its consideration of the evidence. We hold that neither of these rulings constituted error and that Padilla was not prejudiced by admission of the challenged testimony.

At trial the prosecutor argued that the evidence was relevant because the thoroughness of the police pat-downs of Defendants had been questioned. However, it appears that only the thoroughness of the search of Soper was questioned in connection with the defense contention that Detective Polanco may have planted a gun which was not revealed by pat-downs. The trial court suggested that Padilla should have made a motion in limine or objected before Nieto responded, but the judge left open the possibility of a curative instruction. The trial court found that the testimony was not improper.

Padilla now argues that the testimony was not admissible under SCRA 1986, 11–403 (exclusion of relevant evidence on grounds that its probative value is outweighed by danger of unfair prejudice), –404 (evidence of other wrongs not admissible to prove conforming acts), and –405 (methods of proving character). Since the objection at trial was based only on a lack of relevance, we will not address these new bases for exclusion. *See* SCRA 1986, 11–103(A)(1); *State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986). Moreover, we are not convinced that Nieto's testimony was not relevant evidence. *See State v. Richardson,* 114 N.M. 725, 728, 845 P.2d 819, 822 (Ct. App.) (evidence of drug use highly probative to establish defendant's motive to embezzle), *cert. denied,* 114 N.M. 550, 844 P.2d 130 (1992); *see also* SCRA 1986, 11–402 (relevant evidence generally admissible). Nor are we persuaded that Padilla suffered any prejudice. At the close of the trial, after Padilla tendered an instruction directing the jury not to consider the syringe testimony for any purpose, the prosecutor argued that any prejudice was removed when Padilla admitted two prior felony convictions for drug offenses. In addition, the State points out that Padilla also testified she was using methadone on the day of the armed robbery. Thus, there was no prejudice from the challenged testimony because the jury was informed by Padilla's own testimony that she had been and was a drug user. *See State v. Wright,* 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972) (in order for error to be reversible, it must be prejudicial).

Padilla argues that she may not have chosen to testify on her own behalf if the State had not been successful in having the syringe testimony admitted. We are not persuaded. Padilla's attorney acknowledged that Padilla's testimony regarding why she drove to Willow Road was a critical part of her defense. Padilla simply faced the dilemma that all defendants encounter when deciding between complete silence and presenting a defense, and she chose the latter tactic. *See generally State v. Smith*, 88 N.M. 541, 544, 543 P.2d 834, 837 (Ct.App.1975) (no violation of privilege against self-incrimination).

## CLOSING ARGUMENT

Padilla alleges various instances of prosecutorial misconduct. The portions of the closing argument challenged by Padilla are outlined below, followed by our reasons for rejecting Padilla's contentions. We are not persuaded that the prosecutor's conduct was improper, nor are we convinced that the trial court erred in not permitting Padilla's counsel to make contemporaneous objections to the prosecutor's closing argument.

1. Alleged misstatements of fact.

■ a. The prosecutor stated that Morgan identified Defendants as the persons who robbed the gas station and drove the getaway car. Morgan testified that she recognized Soper in court after she had identified a photograph of him. However, there was no prejudice from the fact that Morgan also identified Padilla in court as the driver of the car because Padilla admitted that she drove the car in which Soper was a passenger. In addition, the jury was told that it should rely on its own recollection of the evidence. *See also* SCRA 1986, 14–104 ("What is said in the arguments is not evidence.").

■ b. The prosecutor stated that Morgan selected Soper's photograph from an array. Morgan testified that she recognized Defendant from the photograph she picked, and she told Officer Ortiz that the eyes of the person in the photograph looked like those of the man who robbed her. In addition, Sop-

er's attorney acknowledged that Morgan selected the correct photograph. However, the prosecutor's argument was well within the latitude permitted to comment on the evidence. *See State v. Montoya*, 95 N.M. 433, 435, 622 P.2d 1053, 1055 (Ct.App.), *cert. quashed*, 95 N.M. 426, 622 P.2d 1046 (1981).

■ c. The prosecutor stated that Morgan told the police that the gun which the police showed her looked exactly like the gun wielded in the robbery. Morgan testified that she identified the gun as the same type used by the robber. However, there was no misstatement of the evidence.

■ d. The prosecutor displayed currency which had not been introduced into evidence. The trial court observed that it was clear that the exhibited bills were not the funds which had been stolen; Rohlfs had testified that he returned the money found in the car to Morgan. Thus, the prosecutor's exhibition of funds did not constitute a misstatement.

■ e. The prosecutor stated that police officers saw the bandanna around Soper's neck. Since Officers Ljunggren, Nieto, and Rohlfs all testified that Soper was wearing a bandanna, there was no misstatement.

2. Alleged misstatements of the law.

a. The prosecutor argued that Defendants acted together. Defendants' alleged collaboration was at the heart of the charges that they conspired to commit an armed robbery and that Padilla aided and abetted the robbery. Thus, there was no error.

b. The jurors should use their common sense in determining Defendants' culpability. Reasonable doubt is a doubt based in part upon common sense. SCRA 1986, 14–5060.

■ c. The jury could not disregard everything and acquit because it did not like a police officer. The prosecutor went on to say that the jury could disregard an officer's testimony if it believed the witness was lying but that it should not disregard everything.

Padilla has not shown that there is anything improper about separately evaluating the credibility and significance of an individual witness's testimony. *Cf.* SCRA 1986, 14–5020.

3. References to defense counsel by name and alleged misstatements of Padilla's closing argument.

■■■ The references to defense counsel were necessary to make clear which arguments the prosecutor was addressing. There is no indication that the arguments personally impugned defense counsel. *See State v. Chamberlain,* 112 N.M. 723, 730, 819 P.2d 673, 680 (1991). Nor was it improper to characterize Padilla's attorney's attack on the credibility of the State's witnesses as an attempt to avoid conviction. *See State v. White,* 101 N.M. 310, 315, 681 P.2d 736, 741 (Ct.App.), *cert. denied,* 101 N.M. 189, 679 P.2d 1287 (1984).

4. Refusal to allow Padilla's counsel to make contemporaneous objections to the prosecutor's argument.

■■■ The trial court believed that Padilla's counsel was making objections to harass the prosecutor and instructed him to write down his objections for discussion afterwards. After the jury was sent to deliberate, Padilla's counsel detailed eleven objections. Some of those objections form the basis of Padilla's issues on appeal and others she has chosen not to pursue. Padilla now argues prejudice due to her trial counsel's alleged inability to write fast enough to record all the objectionable parts of the argument. If that was the case, we would expect to hear about the additional objectionable portions now that appellate counsel has had an opportunity to review the transcript. Since no new meritorious issues have been brought to our attention, Defendants have failed to show prejudice from the judge's method of managing the proceedings.

## INABILITY TO CROSS–EXAMINE DEPUTY POLANCO REGARDING PENDING CRIMINAL CHARGE

■■■ At a hearing before trial, Defendants set forth a number of questions they wanted to ask Deputy Polanco. In essence, Defendants were not permitted to impeach Polanco with evidence that he had been charged with criminal sexual penetration (CSP) committed under color of authority as a police officer and, as a result, had been suspended from duty. A theory of the defense was that Polanco had planted the gun which was found in Rohlfs' police car where Soper had been sitting *after* he had been searched. Defendants had wanted to show that Polanco was untruthful and that he misused his position to plant the gun in the patrol car. We conclude that the trial court did not abuse its discretion in restricting cross-examination.

Polanco testified that he was on suspension. The fact that the deputy had been charged with CSP was not admissible as a prior bad act under SCRA 1986, 11–608(B) (specific instances of conduct bearing on credibility). *See State v. Herrera,* 102 N.M. 254, 260, 694 P.2d 510, 516, *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2332, 85 L.Ed.2d 848 (1985). In addition, assuming arguendo that the facts underlying the charges against Polanco were relevant to the witness's credibility, Defendants' impeachment attempt based only on the charges was improper. *See id.* (inquiry into only charges of misconduct rather than instances of actual misconduct). Finally, since Defendants assumed that Polanco would assert his privilege against self-incrimination if asked about the substance of the charges, any such questions would enable the jury to draw the impermissible inference that Defendants were innocent based on Polanco's claim of self-incrimination. *See State v. Crislip,* 110 N.M. 412, 417, 796 P.2d 1108, 1113 (Ct.App.) (defendant's purpose in having his wife invoke the privilege against self-incrimination before the jury was to enable jury to draw inference that he was innocent), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990).

Additional support for the trial court's ruling comes from the fact that Defendants were able to bring out the difference between Polanco's version of events and those of the other police officers. Hence, Defendants were not without means to challenge the witnesses' credibility.

## DENIAL OF MOTION FOR SEVERANCE

■ Padilla repeatedly moved for severance based on the conduct of Soper in appearing at trial in an intoxicated condition, and she also alleged that Soper used vulgar language in the proximity of the jury room. As the State points out, Padilla made no attempt to question the jurors to ascertain whether any of them heard Soper's statements. In addition, Padilla's claim of prejudice due to Soper's condition is speculative; it is conceivable that Soper's condition added credence to Padilla's suggestion that Soper is a bad person and that she was deceived into driving the getaway car for him. In sum, there is nothing of record to persuade us there is an appreciable risk that the jury convicted Padilla for illegitimate reasons. Accordingly, we hold that the trial court did not abuse its discretion on this issue. *See State v. Ramming,* 106 N.M. 42, 47, 738 P.2d 914, 919 (Ct.App.), *cert. denied,* 106 N.M. 7, 738 P.2d 125, *and cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).

## READING OF WITNESSES' STATEMENTS

■ Morgan and Ramirez had difficulty recalling some of the details of the robbery. After the prosecutor was unsuccessful in refreshing the witnesses' recollections with their written statements, Detective Ortiz was permitted to read from and testify regarding parts of statements which he took from Morgan and Ramirez on the night of the robbery. Defendants objected on the ground that Ortiz's testimony was inadmissible hearsay, and they argued that Ortiz's reading of the witnesses' statements did not qualify under SCRA 1986, 11–803(E) (recorded recollection) because Ortiz did not testify that he could recall the witnesses' statements. We are not persuaded. Detective Ortiz testified he obtained the statements from the two clerks as a secretary recorded them verbatim. The clerks reviewed the transcribed statements and signed them. Ortiz also signed them. Morgan testified that what she told the deputies was correct. She remembered the statement being typed out and reading and signing it. Ramirez testified that whatever her prior statement said regarding the color of the robber's jacket, that was correct.

The sources of the information, Morgan and Ramirez, thus testified that they once had knowledge they no longer possessed but which they had accurately conveyed to Ortiz at the time of the incident. Ortiz testified how the statements given to him were transcribed verbatim and how he attested to them. This procedure is proper in admitting such a joint statement under SCRA 11–803(E). 4 David W. Louisell & Christopher B. Mueller, *Federal Evidence,* § 445, at 634 (1980). The courts have regularly relied upon SCRA 11–803(E) in affirming the admission of testimony from out-of-court witnesses' statements recorded by investigating officials. *See, e.g., United States v. Lewis,* 954 F.2d 1386, 1392–93 (7th Cir.1992); *Bondie v. Bic,* 947 F.2d 1531, 1534 (6th Cir.1991); *United States v. Riley,* 657 F.2d 1377, 1386 (8th Cir.1981).

Defendants argue on appeal that Ortiz's testimony is not covered by SCRA 1986, 11–801(D)(1)(b). We see no error in the admission of this testimony since, as we have discussed, the evidence is admissible under SCRA 11–803(E). *See State v. Mata y Rivera,* 115 N.M. 424, 429, 853 P.2d 126, 131 (Ct.App.) ("[E]vidence admissible for one purpose is not to be excluded because it is inadmissible for another purpose."), *cert. denied,* 115 N.M. 228, 849 P.2d 371 (1993).

■ After the witnesses' statements were read, Soper objected that the reading of the statements violated his right to confrontation. *See State v. Montoya,* 80 N.M. 64, 68, 451 P.2d 557, 561 (Ct.App.1968) (failure to object until State had finished its comments), *aff'd sub nom. Deats v. State,* 80 N.M. 77, 451 P.2d 981 (1969). Although the hearsay provisions and the confrontation clause are not totally congruent, *California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970), "courts have consistently rejected defense challenges under the Confrontation Clause to the use against the accused of past recollection recorded[,]" Loui-

sell & Mueller, *supra*, § 445, at 641 (footnote omitted). Furthermore, we are not convinced that the additional details furnished by the reading of the statements were of particular significance considering the other evidence surrounding his departure from the crime scene.

In sum, we hold that the trial court did not abuse its discretion in allowing Ortiz to read selected portions of Morgan's and Ramirez's statements. *See State v. Johnson*, 99 N.M. 682, 687, 662 P.2d 1349, 1354 (1983) (standard of review).

## MOTION FOR CONTINUANCE

After the evidence was concluded and the instructions settled, Defendants moved for a continuance so that Hans Leeman could testify. The trial court denied the motion for a continuance as well as Defendants' motion to reopen the case. Neither ruling was error.

Defendants did not reveal Leeman's name or subpoena him until after the first day of trial. The late subpoena for Leeman to appear in court at noon on the second day of trial created a conflict with Leeman's medical appointment in Santa Fe, and the witness did not arrive at the court until late in the afternoon. Leeman testified in an offer of proof that: he lived on Willow Road; Soper had left a watering timer at his house two years earlier with the understanding that he would pick it up in a couple of weeks; and in the spring of 1992 he noticed that the timer was missing from his garage. The State points out that there was no evidence that a watering timer was found in the car and that, even if there had been, the presence of the timer would not tend to prove that Soper did not rob the gas station.

In view of Defendants' failure to use due diligence to obtain Leeman's attendance and the minimal value of the proffered testimony, we hold that the trial court did not abuse its discretion in denying Defendants' motions. *See State v. Ortega*, 112 N.M. 554, 573, 817 P.2d 1196, 1215 (1991) (denial of motion to reopen case to introduce rebuttal evidence is

a discretionary ruling); *State v. Case*, 100 N.M. 714, 718–19, 676 P.2d 241, 245–46 (1984) (due diligence to compel witness's attendance not shown; standard of review).

## CONCLUSION

We reverse the firearm enhancement of Defendants' conspiracy convictions and affirm all of the remaining issues.

IT IS SO ORDERED.

DONNELLY, and BLACK, JJ., concur.