751 So.2d 271 (1999)
STATE of Louisiana
v.
Jason Louis MILTO.
No. 99 KA 0217.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
Rehearing Denied December 30, 1999.
*273 Walter P. Reed, Office of District Attorney, Covington, LA, for State of Louisiana.
Dorothy A. Pendergast, Special Appeals Counsel, Metairie, LA, Robert Glass, Glass & Reed, New Orleans, LA, for defendant-appellant Jason Louis Milto.
Before: SHORTESS, PARRO, and KUHN, JJ.
PARRO, J.
The defendant, Jason Louis Milto, was charged by bill of information with possession of a firearm by a convicted felon in violation of Louisiana Revised Statutes 14:95.1. After trial by jury, he was found guilty as charged. He was sentenced to serve ten years of imprisonment at hard labor, to run consecutively to his sentence for his parole violation. The defendant has appealed, urging nine assignments of error. Since only assignments of error numbers 3, 5, and 9 are briefed, the remaining assignments of error are considered abandoned. See Uniform Rules, Courts of Appeal, Rule 2-12.4.

FACTS
On August 13, 1997, the defendant and Gregory Mitchell, his friend of approximately ten years, went out together for the evening. The defendant drove his own car, and Mitchell rode in the passenger seat. At approximately 2:00 a.m., they were stopped by Slidell police officer Kevin O'Neill, because the temporary license plate on the defendant's vehicle was not clearly visible. Mitchell testified that, at the time of the stop, the defendant told him to take his (defendant's) gun out of the glove compartment while he got out of the car to talk to the police officer. Mitchell complied and put the gun under the seat. Officer O'Neill testified he saw Mitchell's movements in the car and called for backup. He ordered Mitchell out of the car and saw the gun sticking out from under the seat. At that point, he did a pat-down search for weapons and found a small amount of marijuana and a pipe in Mitchell's pocket. The officer also found a box of bullets for the gun in the glove compartment. At the scene, both men denied any knowledge of the gun. Mitchell was taken into custody. The defendant was cited with a summons for the license plate, given a field sobriety test, and released.
Officer O'Neill testified that when they got to the police station, Mitchell indicated that the gun belonged to him. Mitchell was charged only with possession of marijuana. He testified he told the police officer that the gun was his because he was concerned about getting the defendant into trouble. Mitchell was aware that his friend had a prior felony conviction. He testified that after talking to the lawyer he obtained to represent him on the marijuana charge, he went to the police to tell the truth about the ownership of the gun. He contacted Officer O'Neill, who advised him to come to the station to make a written statement.
On August 24, 1997, he went to the police station. Oscar Patrick, who worked with Mitchell at Kmart, accompanied him. Patrick also gave a written statement to police that evening. He stated he was familiar with the defendant, because the defendant had come to the store on a number of occasions to visit Mitchell. Patrick indicated that the defendant came to the store to visit Mitchell one night and discovered that he was on vacation. On that occasion, the defendant told Patrick that he had a gun and showed the gun to *274 Patrick. Patrick said the defendant purchased bullets for the gun at Kmart that night. He said he knew the defendant purchased the bullets because it was his job to check the bags of customers when they exited the store through the garden center where he worked.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assignment of error, the defendant contends the trial court erred in admitting, over defense objection, a prior statement by one of the state's witnesses. Patrick testified at trial that the defendant had shown him the gun in question on an occasion before the stop of the defendant and Mitchell. Defense counsel, during cross-examination, attempted to impeach Patrick by pointing out an alleged inconsistency in his original statement to the police, as well as by attacking his credibility on the basis that he had some bias or motive to lie. Counsel implied the witness would lie for Mitchell, due to the fact that he worked with Mitchell at Kmart and allegedly knew that Mitchell might have problems with his job if he got into trouble involving the weapon. Defense counsel also insinuated that, because Mitchell was an assistant manager at the store, Patrick might feel pressure to protect him in order to keep his (Patrick's) job.
Louisiana Code of Evidence article 801(D)(1) states that a prior statement of a witness is not hearsay if:
[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: ... (b) [c]onsistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper ... motive.
Former Louisiana Revised Statutes 15:497 contained additional language that "it is proper to show that the witness made a similar statement at a time when the supposed motive did not exist and the effect of such statement could not be foreseen." The Louisiana Code of Evidence, effective in 1989, is silent as to that requirement. The official comments to that article, while not authority, are helpful in determining whether the omission of that language effects a change in the admissibility of the type of statement complained of here. The comments indicate this section of the code is based on Federal Rule of Evidence 801(d)(1)(B) and "the requirement that the statement [be] made at an unsuspicious time has been eliminated. But see Article 403."
In a leading treatise on Louisiana evidence law, the authors' notes indicate that the analysis as to the admissibility of a statement under Article 801(D)(1)(b) of the Louisiana Code of Evidence would necessitate a determination of whether the statement was made at a time when the alleged bias or motive to lie did not exist, in order for it to satisfy the relevancy requirements of Articles 401 through 403.[1]See George W. Pugh, Robert Force, Gerald A. Rault, Jr., and Kerry Triche, Handbook on Louisiana Evidence Law 464 (1999). The notes indicate that Article 801(D)(1)(b) "does not deal with relevancy.... Statements consistent with testimony made subsequent to the ... circumstances suggesting a motive to fabricate generally have insufficient relevancy to be admissible." Id. Again, the authors' notes are not authority; however, because this issue of Louisiana evidence law has not been addressed by this circuit or by the Louisiana *275 Supreme Court since the adoption of the Code of Evidence, the authors' notes are persuasive as to the proper analysis to be used when examining the admissibility of a statement introduced under Article 801(D)(1)(b).[2]
The defendant contends that Patrick's out-of-court statement was inadmissible because defense counsel merely attempted to impeach the witness with an inconsistency in a portion of that statement. On the contrary, defense counsel asked numerous questions on cross-examination designed to show that the witness had a motive to lie for Mitchell and thus attacked Patrick's credibility, both on the basis of inconsistency and improper motive. The defendant further argues that, because of the inconsistencies pointed out by defense counsel, the statement did not qualify as a consistent statement in the first place.
Defense counsel attempted to impeach Patrick on the basis that he testified in court that, although he did see the defendant with the gun, he did not think he saw the defendant load the gun. Patrick's out-of-court statement indicated that while he was outside Kmart with the defendant at his car, the defendant loaded the gun. In fact, the testimony at trial was not inconsistent with Patrick's original statement. At trial the witness indicated that he recognized he had originally told the police that he had seen the defendant load the gun and he did not deny that it might be true, but he just did not remember it at the time of trial. Over a year elapsed between the making of the original statement and the day of trial. Patrick's testimony was substantially the same as his statement to the police; it therefore satisfies the requirement that it be a prior consistent statement. Because Patrick's credibility was attacked on the basis of the motive to lie, the prior consistent statement was potentially admissible under Article 801(D)(1)(b).
Although the statement met the technical requirements of Article 801(D)(1)(b), this court must still examine the circumstances to determine whether this prior consistent statement had sufficient relevance in the light of its only purpose, which was to rehabilitate a witness whose credibility in court had been challenged. In August 1997, Patrick had been an employee of Kmart for eight months. Mitchell had worked at the same store for seven years. Although the defense attorney attempted to characterize Patrick as a subordinate of Mitchell, Patrick's testimony as to his understanding of Mitchell's position indicated that he did not view Mitchell as having the authority to make decisions regarding his (Patrick's) employment. At the time of trial, Patrick had not worked at Kmart for a year. There was no evidence that he had maintained any social contact with Mitchell during that time. Under those circumstances, any motive he may have had to lie on behalf of Mitchell had surely dissipated. On the other hand, at the time of his out-of-court statement, all of the factors alluded to by defense counsel were in existence. Therefore, the prior consistent statement, which was made when Patrick may have had a motive to lie about seeing the gun to protect Mitchell, was not relevant to determine whether his in-court statement was true. That in-court statement, made when the supposed motive no longer existed, could not be enhanced by a prior consistent statement made when there may have been such a motive. We conclude that although Patrick's prior consistent statement met the requirements of Article 801(D)(1)(b), and therefore was not hearsay, it did not meet the requirements of Articles 401-403, because it was not relevant for the purpose of substantiating his in-court testimony. *276 For these reasons, the statement should not have been admitted.
Having found that the statement was inadmissible, we must review the record to determine whether the defendant suffered substantial prejudice as a result of its introduction, or whether this was harmless error. The record reflects that the defendant was a convicted felon with numerous misdemeanor convictions. Mitchell had no criminal record. Patrick had a juvenile misdemeanor conviction and a misdemeanor driving-while-intoxicated conviction. Mitchell, who was in the defendant's car at the time that the gun was found, could have legally bought, owned, and possessed a gun. The serial numbers of the gun in question had been filed down so the gun would not have been easily traceable. There is no indication of any reason for Mitchell to resort to the purchase of a gun which appeared altered in this manner. The defendant, on the other hand, could not legally purchase a gun of any sort. Clearly, if he wanted to possess a gun, he would have had to resort to the purchase of a gun sold through illegal sources. This type of transaction is much more likely to result in the possession of the sort of modified street gun that is the subject of the instant case.
When Mitchell went to the police station with Officer O'Neill, he told the officer that the gun was his. Ten days later, he retracted that statement. At trial, his explanation for the conflict in the two statements was that he had initially said the gun was his to protect the defendant and later, after speaking to his lawyer, contacted the police officer to tell the truth. At that time, there were no charges pending against him regarding the gun. The testimony of Officer O'Neill showed that no one had been charged with anything regarding the gun. The defendant seems to be suggesting that Mitchell's lawyer advised him to lie to the police and say the gun belonged to the defendant in order to protect himself from the possibility that he might possibly be charged at some future time with an offense involving the gun or that he might not get into a diversion program because he said the gun was his.[3] No evidence was presented to show that to be the case. It is just as likely that Mitchell's lawyer told him he should not have lied to the police to protect his friend and that he could get into trouble because he lied.
In any case, the evidence clearly showed that the car in which the defendant and Mitchell were stopped that night belonged to the defendant. The gun was found under the seat of the car and a box of ammunition for the gun was found in the glove compartment. The defendant offered no explanation for the ammunition being found in that location other than saying he was away from the car for a period of time during the stop. He indicated that during the approximately four and one-half hours that he and Mitchell spent together that night, he did not see the gun or the box of bullets at any time. It is unlikely Mitchell could have carried those items on his person the whole evening without the defendant noticing them. A much more logical explanation, and one the jury apparently determined to be true, is that the gun and the bullets were in the car and belonged to the defendant.
Lastly, Patrick's in-court testimony indicated that he had seen the defendant with the gun in question prior to the night that the defendant and Mitchell were stopped. At the time of trial, Patrick had not worked at Kmart for almost a year. His only contact with Mitchell during that time had occurred when he stopped by the store to pick up some things and visited with people he had known when he worked *277 there. They had not seen each other socially at all during this period. His in-court statement was made after the alleged motive to lie had dissipated, and it was subject to full cross-examination.
It is against this background that we must examine the potential prejudice of the introduction of Patrick's original statement. The admission of the improper evidence is harmless only if its effect is comparatively minimal so that it can be said it did not contribute to the verdict rendered. State v. Spikes, 96-0334 (La.App. 1st Cir.11/8/96), 683 So.2d 1363, writ denied, 97-0183 (La.9/19/97), 701 So.2d 164. In this case, Patrick's out-of-court statement was cumulative at best, and its effect was comparatively minimal. If anything, the introduction of that statement may have subtly undermined Patrick's credibility, since it was made under circumstances suggesting he may have had a motive to lie to protect Mitchellcircumstances which were no longer extant when he testified at trial. In light of the facts of the entire case, the evidence complained of cannot be said to have contributed to the jury's verdict, and therefore its admission constituted harmless error. See State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473.
The defendant also complains about the form of the statement introduced because Patrick's written statement was published to the jury. Since the only objection made at the time the statement was introduced was to its admissibility and not to its form, this issue has not been preserved for appeal.

ASSIGNMENTS OF ERROR NUMBERS FIVE AND NINE
In his remaining assignments of error, the defendant argues the district court erred in permitting the state to rehabilitate and bolster its own witnesses and to impeach the defendant with a prior conviction it failed to disclose in discovery. Defendant contends that the combination of these errors denied him a fair trial.
At the end of his direct examination of Mitchell, the prosecutor asked Mitchell a series of questions about the circumstances of his testimony. Specifically, the state asked whether he was being truthful, whether he had been offered anything for his testimony, and whether his testimony was a requirement for him to be admitted to the pretrial diversion program. Likewise, the prosecutor asked Patrick whether he was telling the truth in his statement, whether he had been offered anything in exchange for his statement, and whether he had any contact with anyone at the district attorney's office prior to trial regarding his testimony. The defendant argues that these questions violated Article 607(B) of the Louisiana Code of Evidence, which states in pertinent part that "the credibility of a witness may not be supported unless it has been attacked." Some of the prosecutor's questions regarding contact with him or someone from the office appear to have been designed to give background against which the witnesses' statements were made. Asking the witness whether he is telling the truth does nothing more to support his credibility than does his swearing of the oath. The question may be redundant, but it does not violate the provisions of Article 607.
The defendant also contends that the state violated the provisions of Louisiana Code of Criminal Procedure articles 717 and 729.3 in failing to disclose defendant's conviction for resisting arrest. Prior to trial the state furnished defense counsel with a copy of the defendant's rap sheet, which showed a number of arrests and the disposition of some of those arrests. Nowhere on the rap sheet was there mentioned an arrest or conviction for resisting arrest. The prosecution argues that the record of defendant's conviction for resisting arrest was obtained from the Clerk of Court's office and that the defendant had equal access to it. The *278 state further claims defense counsel could have found out from his own client, who obviously also knew about the conviction. These arguments do not address the fact that the prosecutor was clearly in possession of the information prior to his cross-examination of the defendant and had a duty under Article 729.1 to disclose the conviction as soon as he became aware of it. However, the state's failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to the defendant. State v. Selvage, 93-1435 (La.App. 1st Cir.10/7/94), 644 So.2d 745, writ denied, 94-2744 (La.3/10/95), 650 So.2d 1174. In this case, the defendant had a record showing numerous arrests, one felony conviction for distribution of cocaine, a misdemeanor conviction for theft, and a misdemeanor conviction for driving while intoxicated. During cross-examination about his misdemeanor conviction for resisting arrest, the defendant explained that this had occurred when he failed to stop when the police were pursuing him for traffic violations. Considering the defendant's rather extensive record, of which defense counsel was aware, there is little support for the concept that the advice of counsel as to whether or not to testify would have been different had he been aware of one additional misdemeanor conviction. After reviewing the record, it is clear that neither the prosecutor's questions to its witnesses nor the failure to disclose the defendant's additional conviction resulted in substantial prejudice to the defendant or combined to deny him a fair trial. Therefore, these assignments of error are without merit. See LSA-C.Cr.P. art. 921.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Article 401 of the Louisiana Code of Evidence states that relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Article 402 states, in pertinent part, that evidence which is not relevant is not admissible. Article 403 allows the exclusion of even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
[2] In Tome v. U.S., 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), the United States Supreme Court interpreted Federal Rule of Evidence 801(d)(1)(B) to include the pre-motive requirement in the determination of admissibility of the statement as non-hear-say.
[3] Mitchell testified that he was placed into a diversion program as a result of the possession of marijuana charge. He acknowledged that after one year in the diversion program, he would be eligible to seek expunction of the misdemeanor charge. Mitchell denied that his admission to the program was conditioned on his testimony against the defendant in this case.