11 P.3d 141

2000-NMSC-027

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Charlie ALLISON, Defendant–Appellant.**

No. 25,726.

Supreme Court of New Mexico.

Sept. 5, 2000.

Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Enfield, LLP, Peter Schoenburg, Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

SERNA, Justice.

{1} Defendant Charlie Allison appeals his convictions for willful and deliberate first degree murder, aggravated battery, aggravated assault, conspiracy, and tampering with evidence. *See* Rule 12–102(A)(1) NMRA 2000 (appeals from sentence of life imprisonment taken to the Supreme Court). Defendant asserts six errors on appeal: (1) whether the trial court abused its discretion by denying his motion to grant a continuance; (2) whether the trial court erred in allowing the prosecutor to impeach him with an unrelated arrest without first disclosing the information to the defense; (3) whether the trial court erred by admitting a tape and transcript of a witness's out-of-court statement; (4) whether prosecutorial misconduct deprived him of his right to due process and a fair trial; (5) whether Defendant's trial counsel's performance constituted ineffective assistance of counsel; and (6) whether the errors constitute cumulative error. We conclude that the prosecutor's failure to disclose Defendant's unrelated arrest and the failure of the trial court to cure the error were prejudicial, and we must therefore reverse Defendant's convictions and remand for a new trial. For guidance upon remand, we address whether the trial court erred by admitting a witness's out-of-court statement. Because we reverse on the issue of disclosure, we do not review Defendant's other contentions.

### I. Facts and Background

{2} On July 3, 1997, Defendant and Chris Trujillo drove in Defendant's car to apartments located in Albuquerque. Defendant and Trujillo were standing on a first-floor balcony of one of these apartments when they became involved in an argument with four young men located at ground level in front of the balcony: Joseph Ortiz, Juan Ortega, Jesus Canas, and Javier Mendez. Shots were fired from the balcony at a downward angle, all from the same gun. Mendez was killed, and Canas was wounded. Defendant and Trujillo departed in Defendant's car. Defendant admitted to changing the distinctive rims on the car in order to make the car less recognizable after he viewed a news report which included a description of the car.

{3} Trujillo was a member of the Barelas gang. The State introduced evidence that Defendant was also a member of the Barelas gang. Ortega testified that he, Canas, and Mendez were all members of the Juaritos gang; Mendez stated, "Juaritos," prior to being shot. Ortega stated that he, Mendez, and Canas walked together to the apartments, unarmed, and he identified Defendant as one of the men standing on the balcony. He testified that he heard Defendant tell Mendez to leave the area and that Defendant pulled out a gun and fired two or three times at Mendez. Ortega testified that Trujillo took the gun and shot at Ortega and Canas. He stated that Trujillo and Defendant drove away in Defendant's car.

{4} Ortiz, Defendant's cousin, was a former member of the Barelas gang; he was expelled from the gang several years prior to the shooting and warned that he was unwelcome in the area. He testified that he planned to meet Mendez at the apartments on the day of the shooting. The State claims that the record supports an inference that the argument began when the Barelas gang members on the balcony challenged Ortiz's right to be in the neighborhood. Ortiz stated that he heard an argument and gunshots, and then he saw Mendez on the ground. He could not recall various details regarding the incident; as a result, the prosecutor played a tape of an interview between Ortiz and Detective Shawn. Ortiz told the detective that he saw "two guys," that "they looked straight at me, and they told me, 'What are you doing here,'" and, "'You don't belong here.'" During the interview, Ortiz said that he and Mendez exchanged a few words with the men on the balcony, and then described the shooting. Ortiz said that he didn't recognize them, but he did describe a "big guy" wearing black jeans and a black t-shirt, presumably Defendant, and a shorter "skinny guy" wearing jeans and a striped shirt, presumably Trujillo. According to Ortiz, the smaller man had the gun. Although the larger man asked for the gun, the smaller man did not want to give it to him. Ortiz recounted that

the smaller man said, " 'Oh, you guys think I'm joking,' " and then began shooting. Ortiz told the detective that Mendez saw the gun and said, "Well no, no, you don't have to do that, you don't have to do that."

{5} Defendant admitted that he was standing next to Trujillo on the balcony when the shooting occurred, that he drove both to and from the apartments with Trujillo, and that he changed the appearance of the car in order to make it less recognizable. However, Defendant claimed at trial that he was not a gang member, that he was not involved with the shooting, and that he altered the appearance of the car because he feared gang retaliation.

## II. Discussion

### A. Failure to Disclose Defendant's Unrelated Arrest

■ {6} Defendant argues that the prosecutor intentionally failed to disclose an arrest report regarding Defendant which occurred almost one year before trial and approximately six months after the shooting. Defendant was arrested in January of 1998 for using a false name during a traffic stop. The prosecutor conceded that he received the report before Defendant began testifying, yet chose not to disclose it to defense counsel or bring it to the attention of the trial court because he believed that he was under no duty to do so.

> When evidence is disclosed for the first time during trial, this Court must consider the following factors to determine whether the error is reversible: (1) whether the State breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence.

*State v. Mora*, 1997–NMSC–060, ¶ 43, 124 N.M. 346, 950 P.2d 789.

**1.** The State asserts that Defendant relies on cases involving exculpatory *Brady* material, *see Brady*

### 1. Duty to Disclose

■ {7} The first question is whether the State breached a duty or intentionally deprived Defendant of evidence. Defendant argues that the State was required to disclose any statement by Defendant known to it as well as any prior criminal record under Rule 5–501(A) NMRA 2000. Rule 5–501(A) provides that

> the state shall disclose or make available to the defendant:
>
> (1) any statement made by the defendant ... within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney;
>
> (2) the defendant's prior criminal record, if any, as is then available to the state;
>
> (3) any books, papers, documents ... or copies or portions thereof, which are within the possession, custody or control of the state, and which are material to the preparation of the defense or are intended for use by the state as evidence at the trial, or were obtained from or belong to the defendant;
>
> . . . .

Rule 5–505(A) NMRA 2000 provides:

> If, subsequent to compliance with Rule 5–501 ... and prior to or during trial, a party discovers additional material or witnesses which he [or she] would have been under a duty to produce or disclose at the time of such previous compliance if it were then known to the party, he [or she] shall promptly give written notice to the other party or the party's attorney of the existence of the additional material or witnesses.

■ {8} The State argues that the context of Rule 5–501(A)(2), which requires the State to disclose a defendant's prior criminal record, supports the notion that "prior" refers to the time preceding the arrest on the particular charge at issue; thus, because Defendant's undisclosed arrest occurred after his arrest for the crimes in the present case, the State believes it is under no obligation to inform defense counsel.[1] The State argues

*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by which a duty to disclose

that any continuing duty only relates back to events occurring prior to the time of the initial disclosure but not known to the prosecutor at that time. We disagree. To limit the duty to a criminal record prior to the arrest on the charge at issue arbitrarily restricts Rule 5–501(A)(2). *Cf. Standards for Crim. Just.: Discovery and Trial by Jury* § 11–2.1(a) commentary at 29 (1993) (commentary completed 1995) (noting that disclosure of prior convictions or *pending charges* "enables defense counsel effectively to advise the defendant whether to plead guilty, and whether to testify at any trial" and "puts the defense on notice of any need to move to restrict the use of prior convictions for impeachment purposes").

▆▆▆ {9} "The purpose of discovery in a criminal case, indeed the purpose of a trial itself, is to ascertain the truth." *State v. Manus*, 93 N.M. 95, 103, 597 P.2d 280, 288 (1979).

> The articles regulating discovery are intended to eliminate unwarranted prejudice which could arise from surprise testimony. Discovery procedures enable the defendant to properly assess the strength of the state's case against him [or her] in order to prepare his [or her] defense. If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such prejudice may constitute reversible error.

*State v. Selvage*, 644 So.2d 745, 750 (La.Ct. App.1994) (concluding that, because defense counsel was aware of the possibility of the defendant's prior convictions, defense counsel's advice regarding the defendant testifying would not have been different even if fully informed by the prosecution). This rationale would logically apply whenever the arrest occurred if the prosecutor actually

possessed the information, as is the situation in the case before the Court.

{10} Further, the State does not address Defendant's contention that the prosecution must disclose any statement by a defendant which is known to the district attorney under Rule 5–501(A)(1).[2] The allegation that Defendant lied to a police officer regarding his identity was a statement known by the district attorney, contained in the arrest report. We conclude that the statement was subject to disclosure.

{11} Additionally, Rule 5–501(A)(3) requires the prosecutor to disclose any documents which the prosecutor intends to use as evidence at trial. We believe that the record supports an inference that the prosecutor intended to use the arrest report to impeach Defendant regardless of his testimony on direct examination concerning the lack of any other arrests. On direct examination, Defendant's attorney asked him if he had "ever been arrested prior to this," to which Defendant responded, "I have never been arrested, not in juvenile offenses, not for adult offenses." On cross-examination, the prosecutor followed up on the questions on direct regarding other arrests. The prosecutor asked whether the arrest for the present case was "the only time [Defendant had] ever been arrested," to which Defendant answered affirmatively. The prosecutor then raised a new topic by asking Defendant the following series of questions:

Q. Have you ever lied about your name?

A. No.

Q. Never once?

A. No, none that I remember.

Q. You never lied about who you are?

A. No.

arises from the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Rule 5–501(A)(6) specifically addresses a prosecutor's duty to disclose "material evidence favorable to the defendant," *see State v. Brown*, 1998–NMSC–037, ¶ 14, 126 N.M. 338, 969 P.2d 313 (discussing Rule 5–501(A)(6) in relation to a *Brady* claim); thus, Rule 5–501(A)(1) to (3) create disclosure obligations beyond those required by the Due Process Clause. *See* Rule 5–501 committee commentary.

2. For purposes of this opinion, we need not define the exact parameters of what constitutes a "statement" which the prosecutor must disclose under Rule 5–501(A)(1). *See generally* Fed. R.Crim.P. 16(a)(1)(A) (requiring disclosure of "any relevant written or recorded statements made by the defendant," oral statements, recorded in writing, by the defendant made in response to official interrogation, and oral statements by the defendant made during an interrogation that the government intends to use at trial).

Q. Charlie Allison never said I'm somebody else?

A. No.

Regardless of Defendant's lies at trial regarding other arrests, the allegation that Defendant lied to a police officer about his identity would have been admissible under Rule 11–608(B) NMRA 2000 as a specific instance of conduct which demonstrates untruthfulness. We believe that this line of questioning concerning Defendant's lie to the police officer about his identity, which went beyond the issue of whether Defendant had other arrests, demonstrates an intent on the part of the prosecutor to use the evidence at the time the prosecutor became aware of the arrest report.

▪ {12} In *State v. Clark*, 105 N.M. 10, 11–12, 727 P.2d 949, 950–51 (Ct.App.1986), a defendant appealed his conviction of receipt of stolen property. Following a hearing, the trial court allowed the prosecutor to cross-examine the defendant regarding the fact of the defendant's prior forgery conviction pursuant to Rule 11–609 NMRA 2000 (impeachment by evidence of conviction of a crime), if the defendant testified. *Clark*, 105 N.M. at 14, 727 P.2d at 953. During direct examination, defense counsel elicited the fact of the forgery conviction from the defendant; during cross-examination, the prosecutor questioned the defendant as to whether he altered a driver's license in order to carry out the forgeries. *Id.* Defense counsel moved for a mistrial because of the prosecutor's intentional failure to disclose the information about the altered license to the defendant, but the trial court denied the motion. *Id.* at 15, 727 P.2d at 954. The prosecutor obtained the license alteration information from the investigatory report of the prior forgery arrest, which had been attached to the judgment and sentence for the prior forgery conviction; the prosecutor disclosed the judgment and sentence to defense counsel but withheld the investigatory report. *Id.* The Court of Appeals noted,

Notwithstanding that the facts surrounding the altered license would be inadmissible as an underlying circumstance of a prior conviction, those same facts are admissible under [Rule 11–608(B) ], as a specific instance of conduct which is probative of truthfulness.

*Clark*, 105 N.M. at 15, 727 P.2d at 954. The defendant argued that the prosecutor had a duty to disclose the license alteration information based on Rule 5–501(A). *Clark*, 105 N.M. at 15, 727 P.2d at 954. In *Clark*, the State argued "that because the prosecutor intended to use the information to impeach defendant's credibility, the [investigatory] report is somehow not a statement or document required to be disclosed by the rule." *Id.* at 15–16, 727 P.2d at 954–55. The Court of Appeals rejected this argument and held that "[e]vidence which the state intends to use at trial must be disclosed," and that "[t]he state must also disclose items which are material to the preparation of the defense." *Id.* at 16, 727 P.2d at 955. We agree. "[T]he primary function of the disclosure of the criminal record relates to potential impeachment." 4 Wayne R. LaFave et al., *Criminal Procedure* § 20.3(e), at 860 (2d. ed.1999).

{13} In *State v. Milto*, 751 So.2d 271, 277–78 (La.Ct.App.1999), the prosecutor gave the defense counsel a copy of the defendant's rap sheet which included numerous arrests but did not include the defendant's arrest or conviction for resisting arrest. *Id.* at 277. The Louisiana court rejected the state's arguments that defense counsel had access to the records and that the defendant was clearly aware of the conviction himself. *Id.* at 277–78. In the present case, the State also emphatically relates that Defendant was aware of his arrest. "These arguments do not address the fact that the prosecutor was clearly in possession of the information prior to his cross-examination of the defendant and had a [continuing] duty to disclose the conviction as soon as he became aware of it." *Id.* at 278. Indeed, the State's argument that Defendant's awareness of the arrest relieves any discovery violation would frustrate the purposes of Rule 5–501(A)(2). A criminal defendant, having been personally subjected to police custody, will always be aware of prior arrests. A defendant, however, might not recall a particular arrest or be aware of the significance of an arrest to impeachment through cross-examination.

{14} Defendant analogizes his situation with cases in which a defendant is impeached with his or her own statement regarding the matter upon which the defendant is accused. Although the State distinguishes these cases without discussion or authority, we believe that they are similar to the present one in that the defendants are aware of their own statements. The actions of the prosecutor and trial court are at issue, not whether Defendant knew or should have known of his own arrest or statement. The discussion in *United States v. Sukumolachan,* 610 F.2d 685 (9th Cir.1980), is instructive:

> [Defendant] argues that the appropriate remedy for such a discovery violation is a new trial, citing *United States v. Lewis,* 511 F.2d 798 (D.C.Cir.1975), and *United States v. Padrone,* 406 F.2d 560 (2d Cir. 1969). In these cases convictions were reversed and remanded for new trials where incriminating statements were not disclosed until after defendants had taken the stand, and were then used for impeachment. Had the defendants in those cases known of the statements, they might have chosen not to testify and thus to avoid impeachment. A new trial was required because there was no other way to correct the prejudice resulting from the failure to disclose until after the defendants had taken the stand and exposed themselves to impeachment.

*Id.* at 687–88 (concluding that there was no abuse of discretion because the defendant received the statement before he would have taken the stand and he avoided impeachment by not testifying).

{15} The trial court also believed that the prosecutor intentionally kept the information from defense counsel, stating, "You held onto this because you knew it would be thunder, right?" "In a criminal case, the district attorney should not hesitate to show his [or her] entire file to the defendant. It is not the primary duty of the district attorney to convict a defendant. It is his [or her] primary duty to see that the defendant has a fair trial, that justice is done." *Manus,* 93 N.M. at 103, 597 P.2d at 288 (quotation marks and quoted authority omitted); *Clark,* 105 N.M. at 16, 727 P.2d at

955 ("The process is far too important and the goal too dear to allow this kind of trial maneuvering.").

{16} We conclude that the prosecutor had a duty to disclose the arrest report to defense counsel before Defendant testified. Rule 5–501(A) creates a duty on the part of the prosecutor to disclose any statement by Defendant, his prior criminal record, and any document which is material to the defense or that the State intends to use as evidence at trial. Rule 5–505(A), as a continuing duty to disclose, obligated the prosecutor to disclose the arrest report to defense counsel when he became aware of it and intended to use it at trial.

## 2. Materiality of the Arrest Report

{17} The second *Mora* factor is whether the improperly non-disclosed evidence was material. "Whether evidence is material depends on 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *State v. Fero,* 107 N.M. 369, 371, 758 P.2d 783, 785 (1988) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). The State argues that "proof that Defendant lied on the stand tended to resolve, not create, doubts about his guilt. Because it bolstered rather than undermined confidence in the outcome of Defendant's trial, it was not material in the operative sense of that word." However, this assertion supports the importance of the information to Defendant, and the impact of the prosecutor's tactic on the jury, even though the evidence is not exculpatory. In *Clark,* the Court of Appeals rejected a similar prosecution argument that this type of information is not material:

> As to the assertion that the [investigatory] report was not material to the defense, the state offers no authority for the proposition that information that would certainly impact a defense counsel's tactical trial decisions is not material to the defense. Receipt of the report would clearly affect counsel's decisions on further suppression

motions; on whether defendant should testify; on the preparation of defendant for cross-examination; and on the extent of information elicited by defense counsel on direct.

*Clark,* 105 N.M. at 16, 727 P.2d at 955. We agree. We conclude that the information regarding Defendant's prior arrest was material to the defense.

### 3. Prejudice

▓▓▓▓ {18} The third factor is whether Defendant was prejudiced by the prosecutor's failure to disclose his arrest. In both *Clark* and *Milto,* the appellate courts, although concluding that there was a discovery violation, affirmed the convictions at issue because the discovery violation did not cause prejudice to the defendants. *See Clark,* 105 N.M. at 16, 727 P.2d at 955 (concluding that the defendant did not show prejudice, and thus affirming the trial court's denial of a mistrial); *Milto,* 751 So.2d at 278 (concluding that because of the defendant's extensive criminal record and defense counsel's awareness of it, no actual prejudice resulted, stating that "there is little support for the concept that the advice of counsel as to whether or not to testify would have been different had he been aware of one additional misdemeanor conviction"). Here, however, defense counsel was attempting to portray Defendant as an individual without any criminal record, and had counsel been aware of Defendant's arrest, he may have altered his strategy. Defendant argues that the disclosure of his prior arrest prejudiced him greatly because his credibility was critical to his defense. He asserts that the disclosure was devastating both at the time of cross-examination and when the prosecutor referred to it in closing arguments. The State argues that "[t]he question before this Court is whether loss of the ability to lie on the stand without having one's lies exposed constitutes prejudice for purposes of the *Mora* test." We reject this characterization; had defense counsel been aware of the arrest, he may have chosen not to have Defendant testify or may have questioned him differently on direct, and the prosecutor's intentional actions prevented that opportunity. *Cf. State v. Wells,* 639 S.W.2d 563, 566 (Mo.1982) (en

banc) ("The state cannot logically contend that it was unaware this information [regarding contradictory statements by a state witness] would be meaningful to appellant's counsel. By withholding disclosure until its opening statement at trial, the state achieved the very result the discovery rules were designed to prevent—surprise and deception. The discovery rules seek to foster informed pleas, expedited trials, a minimum of surprise, and the opportunity for effective cross-examination."); *Sukumolachan,* 610 F.2d at 688 (noting that "the court denied appellant the opportunity to testify without impeachment" because the evidence, although excluded from the government's case in chief, would have been admissible for impeachment had the defendant taken the stand).

{19} The prosecutor used the arrest both in cross-examination in order to impeach Defendant and in closing in order to characterize Defendant as a "liar," supporting Defendant's claim that he was prejudiced by the prosecutor's failure to disclose the arrest. The prosecutor, in closing argument, stated:

> This is a man that would lie about his own name in January of 1998, a man who would lie about his own name and say my name is Michael Barns when he was stopped driving a car that didn't have a license plate on it. If you think that he'll lie about his name because of a stop with no license plate, do you think he would lie about what happened on July 3d in front of 1200 Coal, Southwest? You bet, you bet you he would lie, big time.

*Cf. United States v. Camargo–Vergara,* 57 F.3d 993, 999 & n. 5 (11th Cir.1995) (concluding that the prejudicial impact of the government's failure to disclose defendant's statement was emphasized by prosecutor's reference to it in closing argument). Thus, the prosecutor was using the undisclosed evidence not merely to counter Defendant's testimony regarding other arrests, but instead as a specific instance of conduct to demonstrate untruthfulness, to assert that Defendant would lie regarding the murder as he lied to the police officer. We conclude that Defendant was prejudiced by the prosecutor's failure to disclose the arrest report.

### 4. Trial Court's Duty to Cure

{20} "In determining prejudice to a defendant where the state initially deprives defendant of the evidence but later produces the evidence, the reviewing court should consider whether the failure to timely disclose the evidence was cured by the trial court." *Mora*, 124 N.M. 346, 950 P.2d 789, 1997–NMSC–060, ¶ 44 (quotation marks and quoted authority omitted). The trial court granted defense counsel's motion to continue the case until the following morning, but denied Defendant's motion for a mistrial. The trial court judge noted that the prosecutor's actions were "inappropriate:"

> This is cross-examination material of the Defendant in a murder trial and it's my belief that you should not walk the ethical edge in something as important as a murder trial; that you should be as clean and above board as you possibly can in fear that you are going to lose a good solid conviction based upon something you didn't have to do.

The judge believed that he had "fashioned what [he] perceived to be a fair remedy at the time." However, merely continuing the case and excluding the circumstances surrounding the arrest is an inadequate cure for the prosecutor's failure to disclose the evidence to Defendant, especially considering the manner in which the prosecutor used the information in closing.

{21} The trial judge could have cured the error but did not do so, apparently because of his feelings regarding Defendant's testimony. Both the trial court and the State focused on Defendant's possible lie during direct, and his further lies on cross-examination, asserting that he opened the door to the subject of his prior arrests. As discussed above, the prosecutor's use of the information went beyond Defendant's testimony on direct examination by inquiring into the allegation that Defendant lied about his identity. But even assuming Defendant lied regarding his other arrest, the question is not whether the other arrest and allegation about Defendant's identity were otherwise admissible; the proper question is, instead, whether the prosecutor should have disclosed the arrest report to defense counsel as soon as he was

aware of it and planned to use the information at trial. *See Selvage*, 644 So.2d at 750 ("We agree with the trial court that, by testifying, a defendant subjects himself [or herself] to being questioned about previous convictions. However, a discovery violation by the state presents a separate issue regarding the admissibility of the evidence.") (citation omitted).

{22} After the prosecutor questioned Defendant about whether he had other arrests and whether Defendant ever lied to another about his identity, the prosecutor asked to approach and show the arrest report to Defendant in order to refresh his recollection, asking him to identify himself in the photograph and to state when the photograph was taken. Defendant responded, "I believe it was ... when they booked me into the jail." The prosecutor continued with some questions regarding when the picture was taken and how his hair appeared in the photograph. During a bench conference regarding the length of Defendant's hair, the trial court finally asked, "Was he arrested in 1998 for something?" The prosecutor responded, "For concealing ID." Defense counsel objected, and the court asked if the report had been disclosed to defense counsel. After the bench conference ended, the court continued the case until the following morning.

{23} At this stage in the case, little information regarding the arrest had gotten before the jury. It seems that the extreme remedy of a mistrial was not needed to cure the failure to disclose. In order to cure the error, the trial court could have excluded any further information or reference to the arrest. Instead, the court concluded that the prosecutor should have disclosed the information "as a matter of form" but was not under any duty to do so. The court, mistakenly referring to "[Rule 5–] 505," apparently distinguished between a duty to disclose "priors" and a duty to disclose "a subsequent arrest that happened after the alleged incident;" however, as previously mentioned, Rule 5–505 implicates a *continuing* duty to disclose. The judge stated that Defendant, who "took the stand yesterday and lied," did something much more "severe" than the prosecutor and that he would "not do any-

thing at this point to protect him from his lies." The trial court judge appears to have assumed that defense counsel was not aware of the arrest, stating that "[c]ertainly if you had known about this, you would have asked the question more carefully I think, but your client went way out on a limb," and that "it's also poor form for your client not to tell you about that stuff before he takes the stand." The court then decided that the circumstances surrounding the stop and arrest would not be allowed in, but that the prosecutor would be allowed to ask Defendant about the arrest and about giving a false name.

{24} The prosecutor again asked about the other arrest:

Q. Now, you testified yesterday that you had never ever been arrested other than in connection with this case, this shooting; is that right?

A. I thought that you were talking about—

Q. Could you answer that question? You did say that, didn't you?

A. Yes.

The prosecutor questioned Defendant as to whether he gave a false name to the police officer, the details of the actual arrest, and whether he told the officer that he had a driver's license under the false name.

{25} Under the *Mora* test, we conclude that Defendant is entitled to a new trial. The prosecutor has a duty to disclose this type of information to the defense; the prosecutor intentionally kept this information from defense counsel in order to impeach Defendant. *See Clark*, 105 N.M. at 16, 727 P.2d at 955 ("The [Supreme Court of New Mexico] criticized, however, as we do today, the 'gamesmanship' inherent in this type of litigation tactic."). The information was material to Defendant's case. The knowledge of the arrest may very well have affected defense counsel's decision to question Defendant regarding his criminal record or even to advise Defendant to testify. Finally, the trial court did not adequately cure the error.

{26} The State's case centered on the issue of credibility. The State presented eyewitness testimony regarding the incident, but the testimony differed as to whether Defendant or Trujillo fired the gun. Ortega testified that Defendant fired shots towards them and then Trujillo took the gun and continued firing, while Ortiz stated that Trujillo fired shots and Defendant attempted and failed to get the gun from Trujillo. Either scenario supports Defendant's liability, whether as the principal or the accomplice. However, given the inconsistent versions of the incident by the State's witnesses and Defendant's denial of involvement in the shooting, the jury's assessment of Defendant's credibility was critical to this case. *Cf. Lewis*, 511 F.2d at 803 ("Although the government presented a strong case even without the use of the statement, we cannot say that the error was harmless or did not prejudice Lewis, as use of the statement not only impeached Lewis's credibility in general, but undermined a significant element in his defense—namely that he had not been addicted at the time of his arrest."). The State was able to undermine Defendant's credibility through the use of non-disclosed information. We conclude that there is a reasonable possibility that the State's impeachment of Defendant and use of the undisclosed arrest in closing argument contributed to the jury's verdict. *Cf. Clark v. State*, 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991).

## B. Admission of the Tape and Transcript

{27} The State called Ortiz as a witness to the shooting, and after Ortiz stated that he could not recall particular details of the crime, the prosecutor played an audio tape of Ortiz's July 3rd statement for the jury and placed the transcript of the tape into evidence. The prosecutor offered the tape as a prior recollection recorded under Rule 11–803(E) NMRA 2000, to which defense counsel properly objected. Noting that defense counsel did not object to the tape as a prior consistent statement, Defendant argues on appeal that Ortiz's earlier statement was inconsistent with his in-court testimony and thus inadmissible as a prior consistent statement under Rule 11–801(D)(1)(b) NMRA 2000. However, the trial court did not admit the evidence under Rule 11–801. The court admitted the evidence under Rule 11–803(E) and under Rule 11–803(X) (providing an ex-

ception to the hearsay rule for "[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness"). The court found "that the circumstances of the original statement, the proximity in time to the shooting itself, all are indicia of reliability in that statement."

{28} As the State notes, Defendant's argument regarding whether he may assert on appeal that Rule 11–801 prohibits admission of this evidence in spite of the fact that it was admitted by the trial court under Rule 11–803 was addressed in *State v. Padilla*, 118 N.M. 189, 197, 879 P.2d 1208, 1216 (Ct.App. 1994). In *Padilla*, the Court of Appeals held that the prior statements were properly admitted under Rule 11–803(E) and stated:

> Defendants argue on appeal that [the witness's] testimony is not covered by [Rule] 11–801(D)(1)(b). We see no error in the admission of this testimony since, as we have discussed, the evidence is admissible under [Rule] 11–803(E). *See State v. Mata Y Rivera*, 115 N.M. 424, 429, 853 P.2d 126, 131 (Ct.App.[1993]) ("[E]vidence admissible for one purpose is not to be excluded because it is inadmissible for another purpose.").

*Padilla*, 118 N.M. at 197, 879 P.2d at 1216. Further, the trial court judge did not admit the evidence under Rule 11–801(D)(1), noting that "I'm not admitting it as a prior inconsistent statement." Thus, Defendant's argument regarding Rule 11–801(D)(1)(b) is both misplaced and unpersuasive.

 {29} The State asserts that Defendant has waived any argument regarding Rule 11–803. Although Defendant argues in his reply brief that he "clearly established in his opening brief that the trial court erred in admitting Mr. Ortiz's prior statement as a recorded recollection because it lacked an adequate foundation," Defendant, in his brief in chief, merely stated that the evidence was inadmissible under Rule 11–803(E), without argument or citation to any case law. However, Defendant makes a cursory argument in his reply brief, relying on *Padilla*.

 {30} Under Rule 11–803(E),

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recol-

lection to enable him [or her] to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly.

Ortiz appeared to deny that the information in his statement to Detective Shawn regarding people on the balcony was correct: "Yes, I read the statement and I said I did see two guys, but I don't know why I said it. I guess I said it out of scaredness [sic] or something. But I didn't see nobody." Ortiz, when confronted with his earlier statements regarding descriptions of the individuals on the balcony, stated that he didn't recall them and repeatedly said, "I must have said it because it's on the tape, but I don't remember." Because it appears that the witness was denying the information from the tape, the trial court erred in admitting the evidence under Rule 11–803(E). *See Padilla*, 118 N.M. at 197, 879 P.2d at 1216 (upholding the admission of a past recollection recorded and noting that the witnesses "testified that they once had knowledge they no longer possessed but which they had *accurately conveyed* to [a detective] at the time of the incident") (emphasis added); *see also* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.10[4][c], at 803–52 to –53 (Joseph M. McLaughlin ed., 2d ed. 2000) ("[T]he witness must testify either that the witness recalls having made an accurate memorandum or that, though the witness now does not recollect his or her state of mind when making the record, the witness would not have made it unless it were correct."). However, the trial court also found the evidence admissible under Rule 11–803(X) and Defendant fails to challenge this basis of the trial court's ruling.

> We remind counsel that we are not required to do their research, and that this Court will not review issues raised in appellate briefs that are unsupported by cited authority. When a criminal conviction is being challenged, counsel should properly present this [C]ourt with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure.

*State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) (citations omitted).

{31} The trial court has discretion regarding the admissibility of evidence, and this Court will not disturb the trial court's ruling absent an abuse of that discretion. *See State v. Brown*, 1998–NMSC–037, ¶ 32, 126 N.M. 338, 969 P.2d 313. We must conclude that the trial court's decision to admit testimony was obviously erroneous, arbitrary, or unwarranted in order to find an abuse of discretion. *Brown*, 126 N.M. 338, 969 P.2d 313, 1998–NMSC–037, ¶ 39. Because Defendant has not advanced persuasive arguments on this issue, and in fact failed to address all grounds upon which the trial court admitted the evidence, he has not demonstrated that the trial court abused its discretion by admitting the audio tape and transcript.

### III. Conclusion

{32} We conclude that the trial court did not abuse its discretion by admitting the audio tape and transcript of Ortiz's statement. We conclude that Rule 5–501(A) creates a duty for the prosecutor to disclose any statement by Defendant, Defendant's prior criminal record, and material which the State intends to use as evidence at trial. Defendant's arguments that this information would have affected his decisions regarding trial strategy are persuasive. Further, the prosecutor's use of this information during closing to reason that a person who "would lie about his name because of a stop with no license plate" would lie regarding the crimes at issue supports Defendant's assertion that he suffered prejudice as a result of the prosecutor's failure to disclose the evidence. Finally, the trial court's grant of a continuance was an inadequate cure under the facts of this case. For these reasons, we reverse Defendant's convictions and remand to the trial court for further proceedings consistent with this opinion.

{33} IT IS SO ORDERED.

MINZNER, C.J., BACA, FRANCHINI, and MAES, JJ., concur.

